907 P.2d 994

**Daniel BRITT, Plaintiff–Appellee,**

v.

**PHOENIX INDEMNITY INSURANCE COMPANY and Dairyland Insurance Company, Defendants–Appellants.**

**Nos. 22769, 22765.**

Supreme Court of New Mexico.

Nov. 13, 1995.

Miller, Stratvert, Torgerson & Schlenker, P.A., Terri L. Sauer, Albuquerque, for Appellant Dairyland.

Massey, McDonald & Boone, P.C., Bruce S. McDonald, Albuquerque, for Appellant Phoenix Indemnity.

Law Offices of Daniel J. O'Friel, Ltd., Daniel J. O'Friel, Santa Fe, for Appellee.

## OPINION

MINZNER, Justice.

In this consolidated appeal Dairyland Insurance Co. (Dairyland) and Phoenix Indemnity Insurance Co. (Phoenix) appeal from the trial court's order granting declaratory relief and directing the parties to arbitrate an uninsured motorist dispute. This appeal raises an issue of first impression for New Mexico courts: whether uninsured motorist coverage extends to a victim of an intentional tort perpetrated by a passenger in an uninsured motor vehicle. We conclude that an intentional act may be an "accident" for uninsured motorist coverage purposes but that there must be some connection, other than proximity in time and place, between the act of the passenger and that of the uninsured motorist. We affirm in part, vacate in part, and remand for arbitration.

## I. FACTS

On April 22, 1994, Plaintiff Daniel Britt (Britt) was a passenger in a vehicle driven by Jacqueline Glass (Glass) when it was struck from behind by another vehicle. Although there was minor damage to Glass's vehicle, neither Britt nor Glass sustained any injury from the collision. Britt exited the vehicle in order to assess the damage and to obtain information from the driver of the other vehicle. Two male passengers exited the other vehicle, and a physical altercation ensued. As Britt retreated to Glass's vehicle, one of the men pursued him and stabbed him through the open passenger-door window. It is undisputed that the female driver of the other vehicle remained in the vehicle during the attack. The identity of the assailants and the other vehicle were never established. *See generally American States Ins. Co. v. Frost,* 110 N.M. 188, 188, 793 P.2d 1341, 1341 (1990) (noting that NMSA 1978, Section 66–5–301 (Repl.Pamp.1994) equates uninsured and unknown motorists). The stab wound severed an artery in Britt's leg, and he lost a great deal of blood before receiving medical treatment. Britt incurred medical bills of approximately $17,000, and he sought indemnification of those expenses under insurance policies issued by Dairyland and Phoenix.

Dairyland provided uninsured motorist coverage on the Glass vehicle, and Phoenix provided the same coverage on two vehicles owned by Britt's mother. The language of the uninsured motorist provisions of the two policies are, for purposes of this appeal, substantially similar. Both policies provide that the insurer will pay damages "which an insured [person] is legally entitled to recover from the owner or operator of an uninsured motor vehicle." Moreover, both policies specify that coverage applies to "accidents" arising out of the "ownership, maintenance or

use of the uninsured motor vehicle." This standard policy language generally tracks the language of the New Mexico uninsured motorist statute. *See* § 66–5–301.

Britt brought this action for declaratory judgment in district court seeking declarations that (1) he is an "insured" under the uninsured motorist provisions of both policies; (2) his injuries arose out of an "accident" as that term is used in both policies; and (3) he is entitled to recover from the uninsured motorist, and therefore he is entitled to recover under the uninsured motorist endorsements of the two policies. The trial court granted Britt the requested declaratory relief with respect to the first two issues and ordered the case to arbitration for resolution of the third.

## II. DISCUSSION

### A. Was the trial court's order a final order?

■ As a threshold issue, we consider whether the trial court's order is a final, appealable order. Although none of the parties have raised this issue, we raise it sua sponte because this Court lacks jurisdiction to entertain an appeal from a non-final order. *See, e.g., B.L. Goldberg & Assocs. v. Uptown, Inc.,* 103 N.M. 277, 278, 705 P.2d 683, 684 (1985).

The trial court's order [1] states, in pertinent part:

1. Daniel Britt sustained an accident on April 22, 1994;

2. Daniel Britt may be legally entitled to recover damages [from] the owner or operator of the uninsured motor vehicle;

3. The accident arose out of the use of an uninsured motor vehicle;

4. Plaintiff's Motion for Summary Judgment is granted....

IT IS THEREFORE, ADJUDGED AND DECREED that the Plaintiff Daniel Britt is covered [under the uninsured motorist provisions of the insurance policies] and that this matter should proceed to arbitration[2] to determine whether Daniel Britt is legally entitled to recover damages *from the owner or operator of the uninsured motor vehicle and if so, in what amount.*

Both Dairyland and Phoenix timely filed notices of appeal after entry of this order, and arbitration has apparently been stayed pending this appeal.

■ Although the trial court's judgment resolved the question whether the circumstances surrounding Britt's injury constituted an "accident ar[ising] out of the use of an uninsured motor vehicle," the court did not resolve two other key issues in this litigation: (1) whether Britt is legally entitled to recover from the owner or operator of the uninsured vehicle; and (2) whether the insurers must indemnify Britt for his damages. In this jurisdiction an order is ordinarily interlocutory, and thus it is not appealable, unless "all issues of law and fact have been determined and the case disposed of by the trial court to the fullest extent possible." *Kelly Inn No. 102, Inc. v. Kapnison,* 113 N.M. 231, 236, 824 P.2d 1033, 1038 (1992) (quoting *B.L. Goldberg & Assocs.,* 103 N.M. at 278, 705 P.2d at 684). We conclude that this order is a final order from which an appeal may be taken. In reaching this determination, we adopt the Second Circuit's reasoning that an order compelling arbitration is final if it is the " 'last deliberative action of the court' with respect to the controversy before it." *Manning v. Energy Conversion Devices, Inc.,* 833 F.2d 1096, 1102 (2d Cir.1987) (quoting *Krauss Bros. Lumber Co. v. Louis Bossert &*

---

1. The court denominated its judgment as an "Order Granting Summary Judgment." However, we construe the order as both a grant of summary judgment on two of the three issues for which Britt sought declaratory judgment and an order compelling arbitration. *See* NMSA 1978, § 44–7–2(A) (providing that if agreement to arbitrate exists, court shall order parties to proceed to arbitration).

2. The Dairyland policy provides for arbitration in the event that the insured and the insurer disagree on either the insurer's responsibility or the amount of damages. The Phoenix policy, on the other hand, provides for arbitration only in the event that the parties fail to agree on the amount of damages. The trial court remanded both causes to arbitration for determination of liability *and* damages. Nevertheless, Phoenix did not assert in either the trial court or on appeal that this was error.

*Sons,* 62 F.2d 1004, 1005 (2d Cir.1933)). Although the trial court may confirm or vacate any award following arbitration, its review is very narrow and, as far as the merits of the controversy are concerned, the court is finished with the case when it goes to the arbitrators. *See Krauss Bros. Lumber Co.,* 62 F.2d at 1005. We hold that the trial court's order was final for purposes of appeal.

### B. Was there an accident?

▇ Dairyland and Phoenix take the position that Britt's injuries resulted from an intentional attack, not an accident, and that the incident is therefore outside the scope of coverage of the uninsured motorist policies. Although some jurisdictions have taken such a view of the term "accident," *see, e.g., Lindstrom v. Hanover Ins. Co.,* 138 N.J. 242, 649 A.2d 1272, 1276 (1994), a greater number of jurisdictions have held that, in analyzing whether a particular incident is an "accident" for purposes of uninsured motorist coverage, the courts should view the incident from the injured party's perspective. Thus if the event causing the injury is unintended and unexpected from the injured party's viewpoint, the injury is deemed to have occurred as a result of an accident. *See, e.g., State Farm Mut. Auto. Ins. Co. v. McMillan,* 900 P.2d 1243, 1246–49 (Colo.Ct.App.1994), *cert. granted,* (July 31, 1995); *Redden v. Doe,* 357 So.2d 632, 634 (La.Ct.App.1978); *State Farm Mut. Auto. Ins. Co. v. Coon,* 46 Mich.App. 503, 208 N.W.2d 532, 533–34 (Mich.Ct.App. 1973); *Davis v. State Farm Mut. Auto. Ins. Co.,* 264 Or. 547, 507 P.2d 9, 10, 13 (1973) (en banc) (applying Michigan law); 8C John A. Appleman, *Insurance Law and Practice* § 5092.55, at 392 (1981). We find the latter view to be more consistent with the public policies underlying our legislature's enactment of an uninsured motorist statute. *Cf. Romero v. Dairyland Ins. Co.,* 111 N.M. 154, 156, 803 P.2d 243, 245 (1990) (holding that the uninsured motorist statute is to be liberally interpreted "in order to implement its remedial purpose"). Accordingly, we adopt it today. Because from Britt's viewpoint the

stabbing injuries he sustained were an unexpected and unintended result of the automobile accident, the trial court correctly concluded that Britt's injuries arose out of an "accident" as that term is used in the uninsured motorist endorsements.

### C. Did the injury "arise out of the use" of an uninsured automobile and is Britt "legally entitled to recover" from the operator of the uninsured vehicle?

Although the trial court and the parties to this appeal have addressed these two issues separately, we find them to be inextricably interrelated, and we therefore analyze them together. Under the terms of both the contract language and the uninsured motorist statute, the insurer must indemnify the insured for damages that "arise out of the use of an uninsured motor vehicle" and for which the insured is "legally entitled to recover" from the owner or operator of the uninsured vehicle. *See* § 66–5–301. Dairyland and Phoenix assert that, even if Britt's injury was an accident, it did not "arise out of the use of a motor vehicle." They further argue that Britt is not "legally entitled to recover" from the operator of the uninsured vehicle. In advancing these arguments, the insurers emphasize that there has been no showing that the uninsured vehicle's operator was in any way involved in the stabbing. Britt, on the other hand, argues that his right to recover does not require a showing that the vehicle's operator participated in the stabbing[3] as long as his injuries arose out of an accident involving an uninsured vehicle. Britt rests this argument on the public policies that are embodied in our uninsured motorist statute.

We begin our analysis of these issues by emphasizing that this case involves at least two distinct torts. First, the uninsured vehicle's driver committed a tort when she collided with the Glass vehicle. We do not know whether she struck the vehicle negligently or intentionally, and we will return to the important factual issue raised by her state of mind later in this opinion. The two assailants, on the other hand, committed the inten-

---

**3.** At one point in the district court proceedings, Britt argued that the driver of the uninsured vehicle intentionally collided with the Glass vehi-

cle. On appeal he argues that he is entitled to recover irrespective of whether the collision was intentional.

tional tort of battery. It is beyond dispute that Britt's injuries resulted from the stabbing and not from the collision. Our task is to determine what connection, if any, Britt must show between the two sets of torts in order to bring himself within the coverage of the uninsured motorist endorsements. Can coverage be premised solely upon the fact that he was attacked by passengers in an uninsured vehicle, or must he show a closer nexus between the actions of the uninsured driver and his injuries? Resolution of these issues requires us to examine briefly the principles and policies that underlie both our uninsured motorist insurance statute and the judicial decisions that have interpreted and applied that statute.

Britt points out, quite accurately, that we consistently have held that the uninsured motorist statute and contracts arising thereunder should be construed liberally in favor of coverage in order to implement the remedial purposes behind that statute. Our adherence to this approach has rested upon the recognition that the uninsured motorist statute "was intended to expand insurance coverage and to protect individual members of the public against the hazard of culpable uninsured motorists." *Romero*, 111 N.M. at 156, 803 P.2d at 245; *see generally Padilla v. Dairyland Ins. Co.*, 109 N.M. 555, 557, 787 P.2d 835, 837 (1990), *and cases discussed therein*. Moreover, we have said that these public policies warrant application of "a qualitatively different analysis" from that appropriate for other insurance cases. *Padilla*, 109 N.M. at 558, 787 P.2d at 838. Britt argues that these cases support the proposition that uninsured motorist coverage should extend to situations, like this one, in which the injured party is clearly free from fault, and the actions of an uninsured motorist are a cause-in-fact, if not a proximate cause, of the injury.[4] Although Britt does not thoroughly explain the precise theoretical basis

for his position, we understand his argument to be premised upon one or both of two theories: (1) fault on the part of the uninsured motorist is not a requirement for recovery under the uninsured motorist statute; or (2) the uninsured motorist is vicariously liable for the actions of her passengers. We consider both of these theories in turn.

■ A fundamental tenet of common law negligence is that liability must be predicated upon fault. "In the present state of our law, except in the case of products liability, abnormally dangerous animals, conditions or activities, and a few other instances, [legal] liability is incurred only when the defendant has been at fault, which in the usual case means negligence." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 83, at 598 (5th ed. 1984). We have no reason to believe that the framers of our uninsured motorist statute intended to abandon the fault principle. In fact, the plain language of the statute indicates the exact opposite. In unambiguous language the statute provides that the insurer's duty to indemnify is predicated upon the injured plaintiff's entitlement to recover damages from the uninsured motorist. We recently have held that such an entitlement to recover arises from substantive law independent of the uninsured motorist statute itself, *see State Farm Auto. Ins. Co. v. Ovitz*, 117 N.M. 547, 549, 873 P.2d 979, 981 (1994), and fault principles have long been a fundamental tenet of the substantive tort law of New Mexico. While we invariably have resolved contract ambiguities in favor of the insured in uninsured motorist cases, none of our opinions have ever suggested that uninsured motorist coverage exists without regard to the fault of the owner or operator of the uninsured vehicle. In fact, none of our prior uninsured motorist cases has involved the issue whether the uninsured motorist caused the plaintiff's injury. In virtually all

---

4. The uninsured motorist's act of colliding with the Glass vehicle was the cause-in-fact of Britt's injuries. But for the collision, Britt would not have been injured. What is far from clear is whether the uninsured motorist's actions *proximately* caused Britt's injuries. We are not suggesting here that recovery under the uninsured motorist statute requires the same showing of proximate causation required under a conven-

tional negligence claim. *Cf. Continental W. Ins. Co. v. Klug*, 415 N.W.2d 876, 878 (Minn.1987) (stating that the causation standard for recovery under an uninsured motorist policy is " 'something less than proximate cause in the tort sense and something more than the vehicle being the mere situs of the injury' ") (quoting *Tlougan v. Auto–Owners Ins. Co.*, 310 N.W.2d 116, 117 (Minn.1981)).

of those cases it was undisputed that the uninsured vehicle operator had caused the plaintiff's injuries. *See, e.g., Romero*, 111 N.M. at 155, 803 P.2d at 244; *Padilla*, 109 N.M. at 556, 787 P.2d at 836; *Lopez v. Foundation Reserve Ins. Co.*, 98 N.M. 166, 167, 646 P.2d 1230, 1231 (1982); *State Farm Auto. Ins. Co. v. Kiehne*, 97 N.M. 470, 470–71, 641 P.2d 501, 501–02 (1982); *Chavez v. State Farm Mut. Auto. Ins. Co.*, 87 N.M. 327, 328, 533 P.2d 100, 101 (1975). Nothing in any of these opinions indicates an intent to abandon conventional fault principles in uninsured motorist cases. We conclude that our uninsured motorist statute is not a no-fault statute. It well may be that the burden upon the plaintiff pursuing an uninsured motorist claim is something less than that borne by the plaintiff seeking to enjoy the benefits of a liability policy when pursing an *insured* motorist claim. However, we need not define the precise contours of that burden here.

■ We next consider whether an operator of an uninsured motor vehicle is vicariously liable for the intentional, harmful actions of her passengers or whether we should entertain a presumption of such vicarious liability. As with the no-fault issue just discussed, there is nothing in the uninsured motorist statute or in any of our prior opinions to suggest that vicarious liability would be appropriate in this context. Moreover, none of the thirty-five other states with uninsured motorist statutes similar to ours, *see* 1 Alan I. Widiss, *Uninsured and Underinsured Motorist Insurance* § 2.2, at 23 (2d ed. 1987) (listing states with provisions similar to New Mexico), has, to our knowledge, adopted such an approach. The only published opinion of which we are aware that addresses the issue flatly rejected the notion that an uninsured motorist is vicariously liable for his or her passenger's intentional tort. *See State Farm Mut. Auto. Ins. Co. v. Spotten*, 610 N.E.2d 299, 302 (Ind.Ct.App.1993). Moreover, in those uninsured motorist cases in which courts have permitted a plaintiff to recover for a passenger's intentional act, the recovery has been predicated upon the owner or operator's active participation in or facilitation of the passenger's commission of the harmful act. *See State Farm Mut. Auto. Ins. Co. v. Davis*, 937 F.2d 1415, 1419 (9th

Cir.1991); *Cung La v. State Farm Auto. Ins. Co.*, 830 P.2d 1007, 1011 (Colo.1992) (en banc); *General Accident Fire & Life Assurance Corp. v. Appleton*, 355 So.2d 1261, 1263 (Fla.Dist.Ct.App.), *cert. denied*, 361 So.2d 830 (1978); *Spotten*, 610 N.E.2d at 302; *Foster v. Lafayette Ins. Co.*, 504 So.2d 82, 86 (La.Ct. App.), *writs denied*, 505 So.2d 61, *and writ denied*, 505 So.2d 65 (1987); *Redden*, 357 So.2d at 633. We hold that drivers of uninsured vehicles are not vicariously liable for the intentional torts of their passengers and that a passenger's mere presence in the vehicle is, without more, an insufficient basis from which to conclude that the victim is legally entitled to recover from the operator of an uninsured vehicle.

Having determined that our uninsured motorist statute gives rise to neither liability without fault nor vicarious liability, we turn to the facts of the instant appeal. Here, there was but-for causation between the collision and Britt's injuries. In addition, we know that the driver of the uninsured vehicle bore some fault—amounting to at least negligence—when she collided with the Glass vehicle. However, Britt sustained no injury to himself or his property in the collision. If he had, there is no question that he could recover for such damages. The issue before us here is whether there is a sufficient nexus between the uninsured driver's fault and Britt's injuries. If there is, then Britt's injuries arose out of the use of an uninsured automobile.

■ The supreme courts of both Colorado and Minnesota have developed a method of analysis for determining whether intentional conduct and its resulting harm arises out of the use of an uninsured vehicle. *See Cung La*, 830 P.2d at 1009; *Klug*, 415 N.W.2d at 878. Under *Klug*'s three-part analysis, a court first considers whether there is a sufficient causal nexus between the use of the uninsured vehicle and the resulting harm. Such a causal nexus requires that the vehicle be an " 'active accessory' in causing the injury." *Klug*, 415 N.W.2d at 878 (quoting *Tlougan*, 310 N.W.2d at 117); *see also Cung La*, 830 P.2d at 1009 (holding that recovery might be had if injury would not have been

suffered but for assailant's use of the vehicle). If a court finds that there is a sufficient causal nexus, then it should next consider whether an act of independent significance broke the causal link between the use of the vehicle and the harm suffered. *Klug*, 415 N.W.2d at 878; *see Kish v. Central Nat'l Ins. Group of Omaha*, 67 Ohio St.2d 41, 21 O.O.3d 26, 424 N.E.2d 288, 294 (1981) (holding that intentional act of murder was intervening cause); *cf. United Servs. Auto. Ass'n v. Ledger*, 189 Cal.App.3d 779, 234 Cal.Rptr. 570, 572 (1987) (interpreting liability policy and holding that stabbing was intervening cause). Finally, the court must consider whether the "use" to which the vehicle was put was a normal use of that vehicle. For example, transportation would be a normal use, whereas use of a parked car for a gun rest would not be. *See Klug*, 415 N.W.2d at 878.

 Applying these standards to this case, we conclude that there well may have been a sufficient causal link between the use of the uninsured vehicle for transportation and Britt's injuries. What is less clear, however, is whether the attack by the passengers was an act of independent significance sufficient to break this causal link. It is at this point in our analysis that we recognize, as did the trial court, that a crucial issue of fact has yet to be answered in this litigation. Britt argued in the proceedings below that the driver of the uninsured vehicle intentionally collided with the vehicle in which Britt was a passenger. The trial court declined to make a finding regarding the uninsured driver's culpability, specifically reserving that question for arbitration.[5] If, as Britt asserted, the unidentified driver intentionally rammed Glass's vehicle in complicity with the assailants or in order to facilitate the attack, then the assailants' actions probably did not constitute an "independent intervening cause" sufficient to cut off the nexus between the driver's actions and Britt's injuries. If, on

the other hand, the collision was accidental and the assailants developed the intent to attack Britt after the collision, perhaps due to hot tempers resulting from the collision, then their actions broke the causal link between the use of the vehicle and Britt's injury. *See Ledger*, 234 Cal.Rptr. at 572; *Klug*, 415 N.W.2d at 878. Under the circumstances of this case, then, the question whether Britt's injury arose out of the use of the uninsured vehicle is inextricably tied to the question whether Britt is "legally entitled" to recover from the unidentified driver. The answer to both of those questions, in turn, depends upon the state of mind of the uninsured vehicle's operator at the time of the collision.

### III. CONCLUSION

We affirm the trial court's declaration that Britt's injuries were sustained in an "accident" as that term is used in the uninsured motorist endorsements. We vacate as premature that portion of the trial court's judgment declaring that Britt's accident "arose out of the use of an automobile." The court's judgment is otherwise affirmed. This cause is remanded to the trial court in order that it may proceed to arbitration.

IT IS SO ORDERED.

BACA, C.J., and RANSOM, J., concur.

---

5. In adopting the form of order tendered by Dairyland and Phoenix and quoted in this opinion, the trial court ruled as follows:

   The question on summary judgment was whether the policy would cover this incident. The question of the operator's relative culpability was a matter that was specifically not ruled

on by the court. I therefore intend to enter the order presented by the defendants. I have previously ruled that this matter is covered and, under the policy, the matter is remanded for arbitration including but not limited to the question of whether or not the operator of the vehicle may or may not be held liable.