**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**Filed 6/18/96**

**TENTH CIRCUIT**

_____

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, | ) ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) No. 95-2087 |
| | ) |
| EDMOND BLYSTRA; BARBARA BLYSTRA, individually and as parent and natural guardian of KEVIN BLYSTRA, a minor, | ) ) ) |
| | ) |
| Defendants and Third-Party Plaintiff-Appellants, | ) |
| | ) |
| v. | ) |
| | ) |
| FARMERS INSURANCE COMPANY OF ARIZONA, | ) |
| | ) |
| Third-Party Defendant-Appellee. | ) |

_____

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CIV-94-1030-JP/WWD)**

_____

Thomas L. Grisham of Grisham & Lawless, P.A., Albuquerque, New Mexico, for Appellants.

James E. Lieuwen of Pelton & O'Brien, P.A., Albuquerque, New Mexico, for Farmers Insurance Company of Arizona, and Rudolph Lucero (Terri L.Sauer with him on the brief) of Miller, Stratvert, Torgerson & Schlenker, P.A., Albuquerque, New Mexico, for State Farm Mutual Automobile Insurance Company.

_____

Before **BRORBY, BARRETT** and **LIVELY**,[*] Circuit Judges.

_____

[*] The Honorable Pierce Lively, United States Circuit Judge for the Sixth Circuit, sitting by designation.

**BRORBY**, Circuit Judge.

_____

### I. Factual & Procedural Background

As Kevin Blystra was walking home from school, either the passenger or driver of a white pickup truck shot him in the leg with a pellet gun as the truck drove by. Neither the driver nor the passenger of the truck have been identified. At the time of the incident, Kevin was sixteen years old and lived with his parents, Edmond and Barbara Blystra. The Blystras have incurred substantial medical expenses as a result of the shooting.

At the time of the shooting, Edmond Blystra had two automobile insurance policies issued by State Farm Mutual Automobile Insurance Company ("State Farm") and three automobile insurance policies issued by Farmers Insurance Company of Arizona ("Farmers"). Kevin qualified as an insured under the State Farm and Farmers policies. Each of the policies included uninsured motorist coverage and medical payments coverage. The State Farm policies provided uninsured motorist coverage pursuant to the following language:

> We will pay damages for bodily injury or property damage an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury or property damage must be caused by accident arising out of the ownership, maintenance or use of an uninsured motor vehicle.

(Emphasis omitted.)

The uninsured motorist provision of the Farmers policies read as follows:

> We will pay all sums which an insured person is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of:

2

(a) bodily injury sustained by the insured person. The bodily injury must be caused by accident and arise out of the ownership, maintenance or use of the uninsured motor vehicle.

(b) Property damage.

(Emphasis omitted.)

The State Farm policies did not define the term "accident." The Farmers policies defined "accident" as "a sudden event, including continuous or repeated exposure to the same conditions, resulting in bodily injury or property damage neither expected nor intended by the insured person." (Emphasis omitted.) Both the State Farm and Farmers policies included "hit-and-run" incidents within their uninsured motorist coverage provisions.

With respect to medical payments coverage, both the State Farm and Farmers policies required that the insured sustain bodily injury "through being struck by[] a motor vehicle or trailer."

Following the shooting, the Blystras filed claims with State Farm seeking coverage under the uninsured motorist and medical payments provisions of the State Farm policies. At the Blystras' request, State Farm filed a complaint in the district court seeking declaratory relief with respect to its liability for uninsured motorist and medical payments coverage. The Blystras filed an answer asserting coverage was appropriate and counter-claimed against State Farm, claiming State Farm denied coverage in bad faith.[2] The Blystras also filed a third-party complaint for declaratory relief

---

[2] The district court ultimately dismissed the Blystra' bad faith claim with prejudice, but that claim is not before this court on appeal.

against Farmers, claiming Farmers was liable for uninsured motorist and medical payments benefits. Farmers filed an answer denying the Blystras were entitled to any benefits. The Blystras filed motions for summary judgment against State Farm and Farmers, and the insurance companies filed cross-motions for summary judgment against the Blystras.

The district court granted State Farm's and Farmers' motions for summary judgment against the Blystras. According to the district court:

> neither the uninsured motorists nor the medical payments provisions of the State Farm or Farmers policies cover Kevin Blystra's injuries which resulted from a drive-by shooting. Kevin Blystra was the victim of a crime, not an accident. A drive-by shooting was not a risk the parties reasonably contemplated as insurable.

The Blystras filed a motion for reconsideration, which the district court denied. The Blystras appealed to this court. We exercise jurisdiction under 28 U.S.C. § 1291. We affirm in part, reverse in part, and remand for further proceedings.

## II. Standard of Review & Applicable Law

We review de novo the grant or denial of a motion for summary judgment, applying the same legal standard used by the district court pursuant to Fed. R. Civ. P. 56(c). *Reich v. Stangl*, 73 F.3d 1027, 1029 (10th Cir. 1996), *petition for cert. filed*, No. 95-1631, 64 USLW 3709 (Apr. 9, 1996). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "'When applying this standard, we examine the factual record and reasonable inferences in

4

the light most favorable to the party opposing summary judgment.' If there is no genuine issue of material fact in dispute, then we next determine if the substantive law was correctly applied by the district court." *Wolf v. Prudential Ins. Co. of Amer.*, 50 F.3d 793, 796 (10th Cir. 1995) (quoting *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990)).

The district court's jurisdiction over this case was based on diversity of citizenship. 28 U.S.C. § 1332. A federal court sitting in diversity applies the substantive laws of the forum state. *Barrett v. Tallon*, 30 F.3d 1296, 1300 (10th Cir. 1994). We review de novo the district court's determinations of state law. *Salve Regina College v. Russell*, 499 U.S. 225, 231 (1991). Because New Mexico is the forum state in this dispute, "we must apply the most recent statement of state law by the" New Mexico Supreme Court. *Wood v. Eli Lilly & Co.*, 38 F.3d 510, 513 (10th Cir.1994).

## III. Analysis

We are faced with four issues, each of which derives from the language of the State Farm and Farmers policies. Though the uninsured motorist coverage language differs slightly between the State Farm and Farmers policies, both of the companies' policies share three essential elements that are relevant to this case. First, Kevin Blystra's injuries must have been "caused by" an "accident." Second, Kevin's injuries must have "aris[en] out of the ownership, maintenance, or use of" the uninsured motor vehicle. Third, Kevin must have been legally entitled to recover damages for his injuries from the owner or operator of the uninsured motor vehicle. With respect to the medical payments coverage, the State Farm and Farmers policies do not provide coverage unless Kevin sustained his injuries "through being struck by" a "motor vehicle or trailer." We begin our analysis

5

with the three issues implicated by the uninsured motorist coverage provisions.

A. *Uninsured Motorist Coverage*

    1. *Caused by an Accident*

Because the district court granted State Farm's and Farmers' motions for summary judgment after concluding Kevin Blystra's injuries were not caused by an "accident," we start with this issue. In the time since the district court entered its final judgment in this case, the New Mexico Supreme Court decided *Britt v. Phoenix Indem. Ins. Co.*, 907 P.2d 994 (N.M. 1995). In *Britt*, a case similar to the one at bar in several respects, the New Mexico Supreme Court was asked to decide "whether uninsured motorist coverage extends to a victim of an intentional tort perpetrated by a passenger in an uninsured motor vehicle." *Id.* at 995. On the issue of whether the intentional tort was an "accident," the court adopted the following rule:

> [I]n analyzing whether a particular incident is an "accident" for purposes of uninsured motorist coverage, the courts should view the incident from the injured party's perspective. Thus if the event causing the injury is unintended and unexpected from the injured party's viewpoint, the injury is deemed to have occurred as a result of an accident.

*Id.* at 997. Based on the adoption of this rule, the court concluded that injuries caused by an intentional stabbing "arose out of an 'accident' as that term is used in the uninsured motorist endorsements." *Id.*

State Farm and Farmers conceded in oral argument that the *Britt* decision requires us to conclude the district court applied the wrong rule of law when it decided Kevin Blystra's injuries

6

were not caused by an "accident." *See Wood*, 38 F.3d at 513 (in diversity case we must apply the most recent statement of state law by the forum state's highest court). As *Britt* makes clear, an injury is caused by an "accident" in New Mexico for purposes of uninsured motorist coverage "if the event causing the injury is unintended and unexpected from the injured party's viewpoint." *Britt*, 907 P.2d at 997. Given this standard, the district court erroneously concluded that an intentional criminal act cannot be an "accident."

In his affidavit filed in support of the Blystras' motion for summary judgment, Kevin Blystra stated, "I do not know why I was shot, whether or not the shot was intended for me or who fired the shot. I may have been mistaken for someone else or the shots may have been randomly fired and hit me by accident." In our view, this statement establishes Kevin neither intended nor expected to be shot. Given that State Farm and Farmers proffered no affidavits or other documents contemplated by Fed. R. Civ. P. 56(e) creating a genuine dispute as to whether Kevin intended or expected to be shot, we conclude Kevin Blystra's injuries were caused by an "accident" within the meaning of the uninsured motorist provisions of the State Farm and Farmers policies. State Farm and Farmers contend a genuine issue of fact exists as to whether Kevin Blystra intended or expected to be shot. In support of this contention, they suggest he may have somehow provoked his assailant. We have seen no evidence in the record that supports this contention. We take no view on whether someone who provokes an attacker expects or intends to be shot.

### 2. *Ownership, Maintenance, or Use*

As we move to the next issue, *Britt* again offers us guidance. In *Britt*, the New Mexico

7

Supreme Court adopted a three-part test, borrowed from *Continental W. Ins. Co. v. Klug*, 415 N.W.2d 876, 878 (Minn. 1987), for determining whether an insured's injuries arose out of the ownership, maintenance, or use of an uninsured vehicle. *Britt*, 907 P.2d at 999. First, we must consider "whether there [wa]s a sufficient causal nexus between the use of the uninsured vehicle and the resulting harm." *Id.* To satisfy this standard, the vehicle must have been "an 'active accessory' in causing the injury." *Id.* (quoting *Klug*, 415 N.W.2d at 878). Second, we must "consider whether an act of independent significance broke the causal link between the use of the vehicle and the harm suffered." *Id.* at 1000 (citing *Klug*, 415 N.W.2d at 878). Finally, we must "consider whether the 'use' to which the vehicle was put was a normal use of that vehicle. For example, transportation would be a normal use, whereas use of a parked car for a gun rest would not be." *Id* (citing *Klug*, 415 N.W.2d at 878).

The undisputed facts of the instant case reveal that either the passenger or driver of a pick-up truck shot Kevin Blystra as the truck drove by him. We begin our analysis with *Britt*'s third prong, because it is the least disputed aspect of the necessary analysis. In fact, neither State Farm nor Farmers contend in their briefs that this prong is not satisfied. Under *Britt*'s third prong, we must determine whether the use of the truck during the shooting was a "normal use" of the vehicle. *Id.* At the time of the shooting, the assailant was utilizing the truck as transportation; *i.e.*, he was using the truck as a means "[t]o convey [himself] from one place to another." Webster's II New Riverside University Dictionary 1228 (1984) (defining "transport"). Clearly, such use falls within *Britt*'s "normal use" requirement. *Britt*, 907 P.2d at 1000 ("transportation would be normal use"); *see Klug*, 415 N.W.2d at 878-79 (concluding that a motorist who shot another motorist from his moving car

8

"was using his car for motoring purposes" during the assault) (cited with approval in *Britt*, 907 P.2d at 1000).

We now focus on the two remaining issues: whether there was a sufficient causal nexus between the use of the truck for transportation and Kevin Blystra's injuries and, assuming a sufficient causal nexus did exist, whether an act of independent significance broke the causal link. *See Britt*, 907 P.2d at 999-1000. For a there to be a "sufficient causal nexus between the use of the uninsured vehicle and the resulting harm," the vehicle must have been "an active accessory in causing the injury." *Id.* at 999 (internal quotation marks and citations omitted). When an automobile is used by an assailant to undertake a drive-by shooting, the automobile is almost by definition an "active accessory" to the assault. Through the use of an automobile, a drive-by shooter achieves several advantages in the commission of his crime that would otherwise be unavailable to him. First, the assailant can use the vehicle to unsuspiciously and quickly approach his victim, all the while hiding from public observation that he is armed with a gun. Second, during the commission of the assault, the assailant can use the vehicle to help hide his identity. Third, the assailant can use the vehicle to leave the scene quickly and avoid apprehension. In his affidavit in support of the Blystras' motion for summary judgment, Kevin Blystra stated: "The automobile was used to approach me head on. The shot was fired from the moving vehicle and the vehicle was then used to escape the scene." Under these circumstances, we conclude the white truck that transported the assailant who shot Kevin Blystra was an "active accessory" to Kevin's assault. *See Cung La v. State Farm Auto. Ins. Co.*, 830 P.2d 1007, 1011 (Colo. 1992) ("it is sufficient that the claimants demonstrate that the injury originated in, grew out of, or flowed from a use of a vehicle") (internal quotation marks and citations

9

omitted) (cited with approval in *Britt*, 907 P.2d at 999); *Klug*, 415 N.W.2d at 877-78 (assailant's car was "active accessory" to shooting when assailant used the car to pull alongside victim's car as the two were driving down the highway). Because the truck was an "active accessory," there was a "sufficient causal nexus" between its use and Kevin Blystra's injuries. *Britt*, 907 P.2d at 999.

Finally, we ask "whether an act of independent significance broke the causal link between the use of the" assailant's truck and Kevin Blystra's injuries. *Id.* State Farm and Farmers contend the intentional shooting of Kevin broke the causal link between the assailant's use of the car and Kevin's injuries. In support of this contention, State Farm and Farmers point us to cases relied on by the New Mexico Supreme Court in *Britt* for its holding that an act of "independent significance" can break the necessary causal nexus. To be sure, in *Britt* the court relied on decisions that recognize the causal link between the use of the vehicle and the victim's injuries may be broken by an intervening intentional tort. *See id.* at 1000 (citing *Klug*, 415 N.W.2d at 878; *Kish v. Central Nat'l Ins. Group of Omaha*, 424 N.E.2d 288, 294 (Ohio 1981); *United Servs. Auto. Ass'n v. Ledger*, 234 Cal. Rptr. 570, 572 (Cal. Ct. App. 1987)). All of these cases, however, share an additional element as support for their reasoning--an element we view as crucial to understanding their holdings. Given that *Klug* is relied on so heavily by the New Mexico Supreme Court in *Britt*, *see Britt*, 907 P.2d at 999-1000, we find it the most instructive.

In *Klug*, the victim was driving home from work on the highway when his assailant pulled alongside him and shot Klug in the arm with a shotgun. Klug ultimately escaped his assailant and received assistance. *Klug*, 415 N.W.2d at 877. After concluding a sufficient causal nexus existed

between Klug's injuries and the assailant's use of his automobile, the court examined whether "an act of independent significance occurred to break the causal link." *Id.* at 878. The court concluded the causal link had not been broken. The court reasoned that the assailant's "actions of driving and shooting were inextricably linked. Had [the assailant] used his vehicle to drive ahead of Klug, left his vehicle, and shot Klug from the side of the road, we might have found an intervening act." *Id.* In *Klug*, the Supreme Court of Minnesota drew on another of its decisions to explain its approach to the intervening act of independent significance:

> In *Holm* [*v. Mutual Service Casualty Ins. Co.*, 261 N.W.2d 598, 603 (Minn. 1977)], we found an act of independent significance where a police officer, after pursuing a motorcycle, left his vehicle to make an arrest and committed a battery upon the motorcyclist. We stated, "[the officer] had completely left the vehicle before he administered the tortious battery. The police car served only to transport him to the scene of the incident. The battery could as easily have occurred had [the officer] come upon the stationary motorcycle on foot."

*Klug*, 415 N.W.2d at 878.

As *Klug* indicates, an intentional tort alone does not constitute an act of independent significance sufficient to break the causal link between an assailant's use of his vehicle and the victim's injuries. It is at least equally important that the assailant do something to disassociate the intentional tort from his otherwise normal use of the vehicle. As *Klug* and *Holm* make clear, this might occur if the assailant stops his vehicle and commits the tort after leaving the vehicle. In such a case, the vehicle serves merely to transport the assailant to the scene of the crime and therefore is not an active accessory to the resulting injuries. *See Klug*, 415 N.W.2d at 878 (quoting *Holm*, 261 N.W.2d at 603).

11

Given *Britt*'s heavy reliance on *Klug*, we are convinced the Supreme Court of New Mexico intended to adopt *Klug*'s requirement that an intentional tort does not break the causal nexus between an assailant's use of his vehicle and the victim's injuries unless the assailant does something to disassociate his use of the vehicle from the commission of the tort. The other decisions cited by the court in *Britt* as support for its adoption of the act-of-independent-significance inquiry confirm our reading of *Britt*. In *Kish*, the Supreme Court of Ohio concluded no causal link existed in the case where the assailant emerged from his stopped vehicle in a traffic dispute and fatally shot the other driver, who had also gotten out of his vehicle. *Kish*, 424 N.E.2d at 289, 294. The court explained:

> The relevant inquiry is whether the chain of events resulting in the accident was unbroken by the intervention of any event *unrelated to the use of the vehicle*. The application of this standard to the instant facts leads us to conclude that the intentional, criminal act of the murderer was an intervening cause of injury unrelated to the use of the vehicle. As the court below stated, "the death resulted from an act wholly *disassociated from the and independent of the use of the vehicle as such*."

*Id.* at 294 (cited in *Britt*, 907 P.2d at 1000) (emphasis added).

*Ledger*, the third case cited in *Britt* as support for its act-of-independent-significance inquiry, suggests the same analysis as *Klug* and *Kish*. In *Ledger*, two men were involved in a minor traffic incident. The man whose car was damaged followed the other for several miles. The men eventually pulled into a parking area, got out of their cars, and began to fight. In the course of the fight, one combatant fatally stabbed the other. *Ledger*, 234 Cal. Rptr. at 570. The California Court of Appeal concluded "there was an insufficient causal connection between the stabbing and the vehicle to consider that the former 'arose out of the use' of the latter." *Id.* at 572. According to the court, "[t]he stabbing itself, however regrettable and unfortunate, was not causally connected with [the assailant's]

12

use of the vehicle .... [T]he vehicle served only to transport [the assailant] to the scene where the stabbing took place." *Id.*

Our reading of New Mexico law as indicated by *Britt* leads us to conclude no act of independent significance broke the causal link between Kevin Blystra's injuries and his assailant's use of the white truck that made the drive-by shooting possible. As we have already explained, the vehicle was an "active accessory" to the shooting. The drive-by shooter undertook no intervening action sufficient to disassociate his use of the truck from the shooting -- the "actions of driving and shooting were inextricably linked." *Klug*, 415 N.W.2d at 878.

We note that in *Britt* the court remanded for further factual determinations on the issue of whether the causal link was broken and therefore did not decide the issue as a matter of law. *Britt*, 907 P.2d at 1000. Given the undisputed facts in the instant case, *Britt* does not require us to do the same. In *Britt*, the assailants were passengers who got out of a car involved in an accident and stabbed a passenger in the other vehicle. As the court noted, there was a factual dispute in *Britt* as to whether the driver of the assailants' vehicle "intentionally rammed [the victim's] vehicle in complicity with the assailants or in order to facilitate the attack." *Id.* According to the Supreme Court of New Mexico, if the driver did intentionally aid the assailants

> then the assailants' actions probably did not constitute an "independent intervening cause" sufficient to cut off the nexus between the driver's actions and Britt's injuries. If, on the other hand, the collision was accidental and the assailants developed the intent to attack Britt after the collision, perhaps due to hot tempers resulting from the collision, then their actions broke the causal link between the use of the vehicle and Britt's injury.

13

*Id.*

The instant case suffers from no such factual dispute. Though the parties disagree over whether the driver or passenger of the white truck shot Kevin Blystra, the dispute is immaterial to the question of whether Kevin's injuries arose out of the assailant's use of the vehicle. Whether it was passenger or driver who shot Kevin cannot change the fact that the vehicle was an integral element of the drive-by shooting. The *Britt* court's decision to remand only reaffirms our view that the assailant must disassociate his assault from the vehicle's use to create a break in the causal chain. In remanding, the court merely recognized that, given the right facts, the causal chain might not be broken even though the assailant commits his assault after exiting the stopped vehicle.

Having concluded that each element of *Britt*'s three-part test is satisfied, we conclude Kevin Blystra's injuries arose out of the ownership, maintenance, or use of the uninsured vehicle. *See Britt*, 907 P.2d at 999-1000.

### 3. Entitled to Recover Damages from the Owner or Operator

We now address the final issue implicated by the uninsured motorist provisions of the State Farm and Farmers policies. Even though Kevin Blystra's injuries were caused by an "accident" and arose out of the ownership, maintenance, or use of the uninsured vehicle, the policies confer uninsured motorist benefits only if he would be legally entitled to recover damages for his injuries from the owner or operator of the uninsured motor vehicle. Whether Kevin Blystra could recover damages from the owner or operator of the white truck must be answered by reference to the

14

substantive tort law of New Mexico. *See Britt*, 907 P.2d at 998 (citing *State Farm Auto. Ins. Co. v. Ovitz*, 873 P.2d 979, 981 (N.M. 1994)). As the *Britt* court noted, "fault principles have long been a fundamental tenet of the substantive tort law of New Mexico." *Id.* Thus, Kevin could not recover from the owner or operator of the white truck unless such person shares some actionable fault for Kevin's injuries.

A factual dispute exists as to whether the driver or passenger of the white truck shot Kevin Blystra. In two affidavits submitted in the summary judgment stage of this litigation, Kevin insists the driver shot him. The police report and the investigating officer assert the passenger shot Kevin. Obviously, if the driver shot him, Kevin would be entitled to recover damages from the driver. If the passenger shot him, Kevin still might be able to recover from the driver if the driver's role in the shooting amounted to a tort under New Mexico law. Because of this factual dispute, we have no choice but to remand the case to the district court for further factual determinations on the issue of whether Kevin Blystra could recover damages from the owner or operator of the white truck.

*B. Medical Payments Coverage*

The provisions governing medical payments coverage under the State Farm and Farmers policies do not provide benefits unless Kevin sustained his injuries "through being struck by" a "motor vehicle or trailer." We must therefore decide whether being shot with a bullet fired from a passing vehicle amounts to be being struck by that vehicle. Observing that the Supreme Court of New Mexico has determined that the phrase "struck by a motor vehicle" is vague and should be construed in favor of the insured, *see Foundation Reserve Ins. Co. v. McCarthy*, 419 P.2d 963, 964

15

(N.M. 1966), the Blystras urge us to conclude that Kevin was "struck by" the white truck. Simply because vague insurance language must be read in the insured's favor, does not mandate that we find for the insured. The Blystras have brought forward no New Mexico law that convinces us to read "struck by a motor vehicle" so liberally as to include being struck by a bullet fired from gun held by a passenger in the motor vehicle. The undisputed facts show that Kevin Blystra was not struck by the white truck. He is not entitled to medical payments coverage under the State Farm or Farmers policies.

The judgment of the district court is **AFFIRMED** as to medical payments coverage, **REVERSED** as to uninsured motorist coverage, and **REMANDED** for proceedings consistent with this opinion.