11 P.3d 1234

2000-NMCA-095

**John BARNCASTLE, Plaintiff–Appellee,**

v.

**AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANIES d/b/a/ ANPAC, Defendant–Appellant.**

No. 20,403.

Court of Appeals of New Mexico.

Oct. 2, 2000.

Alan M. Malott, Malott Law Offices, Albuquerque, NM, for Appellee.

Paul E. Houston, Nancy Augustus, Sturges, Houston & Johanson, P.C., Albuquerque, NM, for Appellant.

### OPINION

SUTIN, Judge.

{1} This case and the related case of *Farmers Insurance Co. v. Sedillo*, 2000–NMCA–094, 129 N.M. 674, 11 P.3d 1236 (2000), provide us with the opportunity to explain when uninsured motorist coverage is available under circumstances in which the use of the vehicle is somewhat attenuated from the incident. Defendant American National Property and Casualty Companies (ANPAC) appeals from the district court's grant of summary judgment to Plaintiff John Barncastle on his claims for uninsured motorist coverage for injuries he suffered when

an unidentified passenger of an unidentified vehicle shot him as he sat in the driver's seat of a vehicle at an intersection late one evening. We affirm.

## FACTS AND PROCEEDINGS

{2} At about 10:00 p.m. on November 30, 1995, Barncastle was driving a 1991 Toyota which was stopped at the intersection of Fourth Street and Alameda Road in Albuquerque, New Mexico. An unidentified vehicle pulled up next to Barncastle's car and an unidentified passenger (Assailant) got out, walked over to Barncastle's window, and shot him with a handgun. Immediately thereafter, Assailant returned to the unidentified vehicle. Then the unidentified vehicle left the scene at a high rate of speed with its headlights off. Barncastle suffered substantial personal injuries.

{3} Barncastle was the permissive user of the 1991 Toyota which was insured by an ANPAC policy that included uninsured motorist coverage. On March 19, 1998, he filed a complaint in district court alleging that he had notified ANPAC of his injuries and his intent to file a claim for uninsured motorist coverage. ANPAC's answer admitted its refusal to pay benefits to Barncastle on the ground that the ANPAC policy did not provide for uninsured motorist coverage given the facts of this case.

{4} The parties filed cross-motions for summary judgment. The district court granted Barncastle's motion by order dated March 18, 1999.

## LAW

### Standard of Review

{5} The standard of review on appeal from summary judgment is de novo. *See Martin v. West Am. Ins. Co.*, 1999–NMCA–158, ¶ 11, 128 N.M. 446, 993 P.2d 763. The parties have stipulated to the material facts. ANPAC does not contend that the district court erred in granting summary judgment when material facts were in dispute or conflicting inferences could be drawn. In fact, the district court specifically questioned the parties during the summary judgment hearing about the procedure used in this case because it did not "want to muddy up the decision with an argument about how I got to the ruling." Thus, he ascertained that both parties agreed to the material facts and agreed that further discovery would not produce anything material to the decision. The parties agreed to have the district court decide the matter on that basis. We resolve the question of law of whether Barncastle can recover under the stipulated facts. *See id.; cf. Alvarez v. Chavez*, 118 N.M. 732, 741, 886 P.2d 461, 470 (Ct.App.1994) (holding that when appellant does not rely on a factual conflict and asks the court to rule on the undisputed facts of the case, appellate court will do so), *overruled on other grounds by Trujillo v. City of Albuquerque*, 1998–NMSC–031, ¶ 32, 125 N.M. 721, 965 P.2d 305.

### Insurance Policy Coverage

{6} As stated by the parties, the controlling authority here is *Britt v. Phoenix Indemnity Insurance Co.*, 120 N.M. 813, 907 P.2d 994 (1995). There, after a minor traffic accident involving two motor vehicles, a passenger from one got out and stabbed Britt, who was the passenger in the other vehicle. *See id.* at 814, 907 P.2d at 995. Britt was unable to learn the identity of either the driver of the other vehicle or of the assailant. *See id.*

{7} The *Britt* court determined that intentional torts may be covered by uninsured motorist insurance under proper circumstances. *See id.* at 818, 907 P.2d at 999. Using a three-part test, the trier of fact "first considers whether there is a sufficient causal nexus between the use of the uninsured vehicle and the resulting harm." *Id.* The causal nexus requires the vehicle to be an " 'active accessory' in causing the injury." *Id.* (quoting *Continental W. Ins. Co. v. Klug*, 415 N.W.2d 876, 878 (Minn.1987)).

{8} Second, if there is a sufficient causal nexus, the trier of fact next considers "whether an act of independent significance broke the causal link between the use of the vehicle and the harm suffered." *Britt*, 120 N.M. at 819, 907 P.2d at 1000. Finally, the trier of fact must "consider whether the 'use' to which the vehicle was put was a normal use of that vehicle." *Id.*

## DISCUSSION

{9} Using the test enunciated in *Britt* and elucidated in *State Farm Mutual Automobile Insurance Co. v. Blystra*, 86 F.3d 1007 (10th Cir.1996), the uninsured motorist policies cover this assault. Assailant's vehicle was an "active accessory" in the attack. *Klug*, 415 N.W.2d at 878. The driver of that vehicle used it to get into a position where Assailant could get out and shoot Barncastle. "Whether it was passenger or driver who shot [the victim] cannot change the fact that the vehicle was an integral element of the ... shooting." *Blystra*, 86 F.3d at 1014. The vehicle was further used to escape the scene at a high rate of speed, with its headlights off.

{10} No act of independent significance broke the causal chain. As the district court's letter decision stated,

> the vehicle ... allowed the driver and the shooter to pull alongside Plaintiff's vehicle at the red light in an innocent manner which concealed the upcoming events. The vehicle was running at all times.... The running vehicle reasonably assisted in concealing the identity of the driver and shooter, as well as the presence of the gun.... This vehicle was the instrumentality which is perhaps the major component in the incident, clearly facilitating the attack. This is not a case of an intentional tort being committed simply after the tortfeasor exited the vehicle.

Assailant left the passenger seat, shot Barncastle, and returned to the vehicle. The vehicle left the scene before it or its occupants could be identified or apprehended. As stated in *Blystra*, the *Britt* court "recognized that, given the right facts, the causal chain might not be broken even though the assailant commits his assault after exiting the stopped vehicle." *Blystra*, 86 F.3d at 1014; *see also Klug*, 415 N.W.2d at 878 (noting that the car was used to keep up with plaintiff until the shooting).

{11} Lastly, the third part of the *Britt* test was fulfilled because the car in which Assailant was riding was put to its normal use. *See Britt*, 120 N.M. at 819, 907 P.2d at 1000. The car was used "to drive alongside [the victim] to assault him." *Klug*, 415 N.W.2d at 878.

## CONCLUSION

{12} We affirm the district court's grant of summary judgment in favor of Barncastle.

{13} **IT IS SO ORDERED.**

PICKARD, C.J., and WECHSLER, J., concur.