2003-NMCA-096

75 P.3d 413

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff/Counter–Defendant/Appellee,**

v.

**Chris T. BALDONADO, Defendant/Counter–Plaintiff/Appellant.**

No. 22,883.

Court of Appeals of New Mexico.

June 12, 2003.

Certiorari Denied Aug. 4, 2003.

Rudolph A. Lucero, Ruth Fuess, Miller, Stratvert & Torgerson, P.A. Albuquerque, NM, for Appellee.

Robert J. Mroz, Gregory D. Steinman, Madison, Harbour, Mroz & Brennan, P.A. Albuquerque, NM, for Appellant.

## OPINION

SUTIN, Judge.

{1} Appellant Chris T. Baldonado was shot by Eusebio Michael Aldana and the issue on appeal is whether State Farm Mutual Automobile Insurance Company is liable to Baldonado under the uninsured motorist and medical pay provisions of policies issued to Baldonado's aunt that covered relatives living in her household. For purposes of this appeal, we assume Baldonado fits this description. Two vehicles were stopped at an intersection. Baldonado was a passenger in one vehicle. Aldana was a passenger in the other vehicle. Baldonado exited the vehicle he was in and walked toward the other vehicle to confront its occupants. Shots were fired by Aldana. As Baldonado retreated, he was hit by one or more shots. The district court entered summary judgment in favor of State Farm. We affirm, holding there was no evidence on which either the owner or operator of the other car could be held liable to Baldonado; therefore, State Farm was not liable under its policies.

## BACKGROUND

### The Shooting

{2} Aldana and two friends were cruising Central Avenue in Albuquerque, New Mexico in a Chevrolet Beretta. The car was owned by Aldana's father. Aldana was driving at first, but at some point he moved to the front passenger seat and Joan (a male) Robaina began driving. Robaina's younger brother sat in the back seat.

{3} Baldonado and two friends were also cruising Central Avenue. They were in an Isuzu Rodeo. John Lucero, the owner of the Rodeo, was driving it. Tim Cunningham sat in the front passenger seat and Baldonado sat in the right rear passenger seat.

{4} The occupants of these two vehicles did not know one another. At one point, following an earlier verbal altercation, both vehicles met in the parking lot of an Albertson's store located at Coors Boulevard and Central Avenue. There, the Beretta and another vehicle were chasing the Rodeo around the parking lot. At some point in the vicinity of the parking lot, someone from the Beretta threw a bottle at the Rodeo which may have hit it and left a small dent.

{5} The Rodeo occupants left the parking lot area and the Beretta followed. The two vehicles ended up side by side at the intersection of Coors Boulevard and Central Avenue at a red light. The occupants of the Beretta were laughing at the Rodeo's occupants because of the apparent damage from the bottle. Baldonado got out of the Rodeo and walked toward the Beretta to confront its occupants and ask why they threw the bottle. Baldonado knew that a physical fight could break out. He thought there was going to be a fight. He was mad because the Beretta occupants had thrown beer bottles. As Baldonado walked around the back of the Rodeo, Aldana, seated in the front passenger seat of the Beretta, opened fire. In retreat, Baldonado was hit by a second or third shot. Aldana told Robaina to leave and the Beretta sped away. As the Rodeo was in route to take Baldonado to the hospital, the two vehicles again met, and more shots were fired from the Beretta in the direction of the Rodeo. Shortly thereafter, the police apprehended Aldana and Robaina. Baldonado was paralyzed from the navel down as a result of being shot by Aldana, who was convicted of the shooting.

### Baldonado's Points on Appeal

{6} Baldonado's aunt, Sadie Baldonado, had two State Farm policies. The policies contained uninsured motorist and medical payment coverages. Baldonado contends the district court erred in granting summary judgment dismissing his claims against State Farm, and also erred in denying his motion for summary judgment against State Farm. He argues that he was an insured and covered under the State Farm policies, the shooting was an accident as defined in the policies, the shooting arose out of the use of an uninsured vehicle, the Beretta, and he has the right to recover against the owner or operator of the Beretta.

{7} State Farm contends that Baldonado is not legally entitled to recover from either the owner or operator of the Beretta, that his injury did not "arise out of the use" of an uninsured vehicle, and that he is not entitled to medical payment coverage. With regard to Baldonado's motion for summary judgment, State Farm asserts that a genuine issue of material fact exists as to whether Baldonado was an insured under the policies.

{8} As to uninsured motorist coverage, we address only the issue whether Baldonado is, in the words of the policy, "legally entitled to collect from the owner or driver of an uninsured motor vehicle," the Beretta. Our decision that he is not disposes of that issue. Based on this holding, we need not and do not address the issue whether the court erred in denying Baldonado's motion for summary judgment. We also hold that Baldonado is not entitled to medical payment coverage.

## DISCUSSION

### Posture of Case on Appeal and Standard of Review

{9} Summary judgment was entered, but Baldonado has nevertheless raised purported issues of fact on appeal, without, either below or on appeal, requesting denial of summary judgment on the ground that genuine issues of material fact exist. We therefore entertain the appeal and decide the issues on the basis that material facts are not in dispute.

{10} Where an appellant does not assert the existence of a genuine issue of material fact precluding summary judgment, "our task is to determine whether the district court correctly applied the law to the facts." *Gonzales v. Allstate Ins. Co.*, 122 N.M. 137, 139, 921 P.2d 944, 946 (1996). "To the extent our review involves ... the application of law to undisputed facts, the review is de novo." *Grogan v. N.M. Taxation & Revenue Dep't*, 2003–NMCA–033, ¶ 10, 133 N.M. 354, 62 P.3d 1236; *Barncastle v. Am. Nat'l Prop. & Cas. Cos.*, 2000–NMCA–095, ¶ 5, 129 N.M. 672, 11 P.3d 1234.

The obligation of an insurer is a matter of contract law and must be determined by the terms of the insurance policy. An insurance contract should be construed as a complete and harmonious instrument designed to accomplish a reasonable end. Unambiguous insurance contracts must be construed in their usual and ordinary sense. A clause is ambiguous if it is reasonably and fairly susceptible of different constructions.

*Miller v. Triad Adoption & Counseling Servs., Inc.*, 2003–NMCA–055, ¶ 8, 133 N.M. 544, 65 P.3d 1099 (internal quotation marks and citations omitted). The insurance contract will be construed as a whole. *See Rummel v. St. Paul Surplus Lines Ins. Co.*, 1997–NMSC–042, ¶ 10, 123 N.M. 767, 945 P.2d 985.

### Uninsured Motorist Coverage

{11} It is "[a] fundamental tenet of common law negligence ... that liability must be predicated upon fault." *Britt v. Phoenix Indem. Ins. Co.*, 120 N.M. 813, 817, 907 P.2d 994, 998 (1995). This fundamental tenet applies to claims for uninsured motorist liability, since "our uninsured motorist statute is not a no-fault statute." *Id.* at 818, 907 P.2d at 999. Fault in the context of uninsured motorist recovery for a passenger's intentional tort is "predicated upon the owner or operator's active participation in or facilitation of the passenger's commission of the harmful act." *Id.* In the present case, the language in the policy affords coverage only when the owner or driver of an uninsured vehicle is legally liable to the injured person. It is undisputed that neither the owner nor the driver shot Baldonado. Thus, the issue of uninsured motorist coverage in this case boils down to whether the owner of the Beretta, Aldana's father, or the driver of the Beretta, Robaina, knew or had reason to know that Aldana had a firearm and ammunition in the Beretta and intended to use the firearm, and whether either the father or Robaina participated in any way in the shooting.

{12} No evidence exists in the record that Aldana's father knew Aldana had the vehicle or was using it with the father's permission. The record is devoid of evidence of how Aldana obtained the vehicle. Although Aldana's firearm and ammunition were hidden in the air conditioner vents of the Beretta,

there is no evidence that the father knew Aldana had the weapon in the vehicle.

{13} In regard to operators of vehicles used for intentional torts, "drivers of uninsured vehicles are not vicariously liable for the intentional torts of their passengers and ... a passenger's mere presence in [a] vehicle is, without more, an insufficient basis from which to conclude that the victim is legally entitled to recover from the operator of an uninsured vehicle." *Id.* No evidence exists in the record that Robaina knew Aldana had a firearm and ammunition in the Beretta or that Aldana intended to use the firearm. Baldonado claims Robaina knew Aldana owned a firearm, but such knowledge is insufficient to prove that Robaina knew Aldana had it on the night in question when it was hidden. Baldonado claims that Robaina should have seen Aldana taking the gun out and should have prevented him from using it, but our law requires active participation or facilitation, and not mere inaction.

{14} Baldonado nevertheless claims that complicity and aiding and abetting bring Robaina within fault parameters, by grouping together a series of events and purported knowledge on Robaina's part, namely, that Robaina was involved in the earlier incidents, followed the Rodeo to the Coors and Central intersection, knew that Aldana owned a firearm, chose to remain at the intersection and keep the Beretta in a position for Aldana to shoot Baldonado, and then fled. This evidence is legally insufficient to establish liability on Robaina's part. Robaina's participation in the earlier incidents does not raise any inference of knowledge that Aldana had a firearm in the Beretta or that Aldana intended to shoot anyone. Further, as we have stated, the mere fact that Robaina knew Aldana owned a firearm does not create any inference of knowledge that Aldana had a firearm in the Beretta or intended to shoot Baldonado. No reasonable inference can be drawn from the circumstances that Robaina purposefully remained at the intersection so Aldana could shoot Baldonado. No evidence exists from which a reasonable inference can be drawn that Robaina's driving off after Aldana told him to do so indicates any complicity or participation. Nothing about the circumstances of Robaina driving off indicates either prior knowledge or any type of assistance in the shooting. The evidence Baldonado presents falls short.

{15} The cases on which Baldonado relies, such as *State v. Padilla,* 118 N.M. 189, 879 P.2d 1208 (Ct.App.1994), and *Rael v. Cadena,* 93 N.M. 684, 604 P.2d 822 (Ct.App.1979), are not persuasive. In both of those cases, there was more evidence that the non-active person was a full participant in the unlawful behavior. In *Padilla,* there was a robbery to which the driver drove the robber and left in a hurry after it was over without being told what to do. *Id.* at 192, 879 P.2d at 1211. Further, the robbery did not take place in the presence of the driver, so the driver's flight from the police later on was very probative of her participation. Those circumstances supported knowledge and facilitation whereas in our case Aldana had to tell Robaina to leave and the shooting took place in front of him. In *Rael,* the non-active participant was shouting encouragement to the batterer as the battery was taking place. *Id.* at 684, 604 P.2d at 822. In this case, no reasonable inference exists that Robaina was knowingly assisting or encouraging Aldana.

{16} In sum, no facts in the record can be considered legally sufficient to establish fault on the part of either Aldana's father or Robaina. As a result, Baldonado cannot, as a matter of law, establish fault on either the owner or the operator of the Beretta. Baldonado, therefore, cannot establish liability and the district court did not err in granting State Farm's motion for summary judgment.

**Medical Payment Coverage**

{17} The State Farm medical payment provision covers medical expenses for bodily injury sustained by a person "while they operate or *occupy* a vehicle covered under the liability section." We assume that, as a non-owned car, the Rodeo was covered under the liability section of the State Farm policies. Baldonado argues that the issue of whether he was occupying the Rodeo is a question of fact for the jury. He argues that his close physical proximity to the Rodeo was sufficient for the issue whether he was "occupying" the vehicle to be for the jury.

{18} The material facts as to Baldonado's location and conduct were not in dispute below. Baldonado was shot after he left the Rodeo and had proceeded to confront the occupants of the Beretta. We conclude that Baldonado was not injured while occupying the Rodeo, but rather as he retreated from his pursuit of confrontation following Aldana's first or second shot. *See Allstate Ins. Co. v. Graham,* 106 N.M. 779, 780, 750 P.2d 1105, 1106 (1988) (holding claimant not an occupant, since "not engaged in a transaction oriented to the use of the [insured vehicle]," when engaged in changing the tire on another vehicle).

## CONCLUSION

{19} We affirm the summary judgment entered in favor of State Farm dismissing Baldonado's complaint seeking uninsured motorist and medical payment coverages under his aunt's State Farm policies.

{20} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and RODERICK T. KENNEDY, Judges.