2004-NMCA-059

92 P.3d 20

**Robert J. MIERA, Sr., as Personal Representative of the Estate of Robert J. Miera, Jr., deceased, Plaintiff–Appellant,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign corporation, and Safeco National Insurance Company, a foreign corporation, Defendants–Appellees.**

No. 23,249.

Court of Appeals of New Mexico.

March 16, 2004.

Rosemary L. Dillon, Robert C. Gutierrez, Will Ferguson & Associates, Floyd Wilson, McCary, Wilson & Pryor, P.C., Albuquerque, NM, for Appellant.

Joe A. Sturges, Kenneth J. Tager, Sturges & Houston, P.C., Albuquerque, NM, for Appellee, Safeco National Insurance Company.

Rudolph A. Lucero, Ruth Fuess, Miller Stratvert, P.A., Albuquerque, NM, for Appellee, State Farm Mutual Automobile Insurance Company.

## OPINION

KENNEDY, Judge.

{1} This appeal invites us to reverse the district court's summary judgment granted to Defendants State Farm Mutual Automobile Insurance Company (State Farm) and Safeco National Insurance Company (Safeco), thus extending uninsured motorist (UM) coverage to Robert Miera Jr. when he was shot and killed by an occupant of an uninsured vehicle after Miera got out of the car in which he was riding and was in a confrontation with the occupants of the uninsured vehicle.

{2} We first hold that when Miera severed both his physical contact with the insured vehicle in which he rode and departed from the functional purpose of his occupancy in it, he ceased to be "occupying" that car. Consequently, he was no longer an "insured" under the vehicle's State Farm UM policy. Summary judgment for State Farm was therefore appropriate, and we affirm the district court's judgment on that issue.

{3} Second, we hold that summary judgment was improper as to Safeco because material issues of fact exist as to the elements allowing recovery under UM coverage. We accordingly reverse the district court's granting of summary judgment in favor of Safeco.

## FACTUAL AND PROCEDURAL BACKGROUND

{4} On April 22, 1998, Miera, Ruben Baros, Tara Hardern, and two other friends were in Hardern's Chevy Tahoe going to a party. As the Tahoe approached a stop sign, its occupants noticed a Ford Mustang approaching the intersection. The Mustang was driven by its owner Andreas Yates and Robbie McGrew was his passenger. The Mustang made a U-turn and stopped approximately twenty feet behind the Tahoe. The purpose of the U-turn and stop is disputed. There is evidence that Yates thought he saw some gesturing from the Tahoe and that he might know its occupants; he maneuvered so as to check his impression. There is also evidence that Yates thought the occupants of the Tahoe "were flipping [him] off" and that he looked menacingly at them as he passed and pulled up behind them. A few moments later, Miera and Baros demanded to be let out of the Tahoe and approached the Mustang. An argument and confrontation ensued between Miera and Baros and the occupants of the Mustang. Miera spat and threw beer cans at the Mustang and poked Yates. Within minutes, McGrew took Yates' .40-caliber Glock pistol from the middle console of the Mustang and shot Miera to death.

{5} Hardern's Tahoe was insured by State Farm; her policy included UM coverage. Miera, who lived at home, had UM coverage under his father's Safeco policy. Yates' Mustang was uninsured. Both Safeco and State

Farm moved for and were granted summary judgment in the district court. Both alleged that under their policies Miera was not covered by their UM insurance.

## DISCUSSION

### Standard of Review

{6} The question of whether application of the law to undisputed facts supports summary judgment in a case seeking to benefit from UM coverage is a question we review de novo. *Cuevas v. State Farm Mut. Auto. Ins. Co.*, 2001–NMCA–038, ¶ 6, 130 N.M. 539, 28 P.3d 527. On appeal from summary judgment, we consider the facts in the light most favorable to support a trial on the issues. *Maralex Res., Inc. v. Gilbreath*, 2003–NMSC–023, ¶ 8, 134 N.M. 308, 76 P.3d 626.

### State Farm's Insurance Policy Does Not Provide UM Coverage for Miera's Death Because Miera Was Not "Occupying" the Tahoe When He Was Shot

■ {7} As a passenger in Hardern's Tahoe, Miera was a class-two insured for purposes of UM coverage under her State Farm policy. According to the terms of the State Farm policy, UM coverage applies only if Miera could be considered to have been "occupying" the Tahoe when he was shot and killed. Under State Farm's policy, "occupying" means "in, on, entering or alighting from." In consideration of New Mexico case law on this issue, we hold that Miera was not "occupying" the Tahoe.

{8} It is true that Miera was in close proximity to the Tahoe at the time of the shooting; however, contrary to Plaintiff's contention, this does not mean that Miera was "occupying" the Tahoe. In this case, Miera got out of the Tahoe to pursue an altercation on the road. "Alighting" is an action that Miera had completed before he reached the Mustang. There was no causal connection between Miera's being shot and his occupation of the Tahoe. The altercation occurred after Miera got out of the Tahoe, and his actions once out of the vehicle were not oriented to the use of the Tahoe. *See Allstate Ins. Co. v. Graham*, 106 N.M. 779, 780, 750 P.2d 1105, 1106 (1988) (holding claimant was not an occupant because she was "not engaged in a transaction oriented to

the use of the [insured vehicle]," when engaged in changing the tire on another vehicle); *see also State Farm Mut. Auto. Ins. Co. v. Baldonado*, 2003–NMCA–096, ¶¶ 17, 18, 134 N.M. 197, 75 P.3d 413 (holding that the passenger "was not injured while occupying [the insured vehicle]," but rather was in retreat from the other car when shot). *But see Cuevas*, 2001–NMCA–038, ¶¶ 12,13, 130 N.M. 539, 28 P.3d 527 (holding that the plaintiff was occupying the insured car at the time of the accident because he was engaged in repairing the insured car at the time of the accident, was within close proximity of the insured car, and there was a causal connection between the plaintiff and the insured car at the time of the accident).

■ {9} In *Cuevas*, we applied *Graham* and other factors presented by case law in evaluating whether persons are occupants of a vehicle for purposes of extending UM coverage to them. *Id.* The factors that we considered there, as we will consider here are whether: "(1) there is a causal relationship between the injury and the vehicle; (2) there is a geographical proximity between the person and the vehicle; (3) the person was oriented to the vehicle; and (4) the person was engaging 'in a transaction essential to the use of the vehicle at the time.' " *Id.* ¶ 8. Considering the factors that our courts have used to construe the meaning of "occupying" for the purpose of UM coverage, *id.* ¶¶ 8–11, we hold that Miera is not covered under State Farm's policy. It is not enough that Miera was within close proximity of the Tahoe or that he in all likelihood would have returned to the Tahoe after the altercation and resumed on the way to his destination. The facts show that Miera engaged himself in a confrontation that he participated in away from the Tahoe. Demanding to be let out to pursue a confrontation with occupants of another car in this case was a transaction unrelated to the use of the Tahoe for purposes of UM coverage. Miera therefore severed any casual connection to the use or occupancy of the Tahoe. By doing so, he ceased to be the Tahoe's occupant, and the district court did not err in granting summary judgment to State Farm.

## A Question of Fact Exists Whether Safeco's Insurance Policy Provides UM Coverage for Miera's Death

■ {10} Plaintiff argues that he is entitled to collect damages under Safeco's policy because Yates' Mustang was uninsured at the time of the shooting. Miera was living with his father at the time of the incident and is therefore a household member covered under his father's Safeco policy. Plaintiff contends that the shooting was an accident as defined by the policy and Miera's death arose out of the operation, maintenance, or use of the Mustang. Under the Safeco policy, it will pay damages, caused by an "accident," which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle, but the owner's or operator's liability for damages "must arise out of the ownership, maintenance or use of the uninsured motor vehicle[.]" We hold that whether Yates bears any legal responsibility for the shooting, and whether his actions give rise to Safeco's liability involve a dispute over facts that are sufficiently material as to defeat summary judgment.

■ {11} The Safeco policy extends coverage only when the owner or driver of the uninsured vehicle is legally liable to the injured person. Thus, in this case, because Yates, the owner and operator of the Mustang, did not shoot Miera, we must determine whether Yates can be held responsible when his passenger, McGrew, shot Miera using Yates' gun. *See Britt v. Phoenix Indem. Ins. Co.*, 120 N.M. 813, 814–15, 907 P.2d 994, 995–96 (1995). We determine whether there was a sufficient causal nexus between the use of the Mustang and the resulting injury to Miera, whether an act of independent significance broke the causal link between the use of the Mustang and the shooting, and whether the vehicle was put to its normal use. Under the analysis set forth by *Britt* and its progeny, *see, e.g., Barncastle v. Am. Nat'l Prop. & Cas. Co.'s*, 2000–NMCA–095, 129 N.M. 672, 11 P.3d 1234; *Farmers Ins. Co. of Arizona v. Sedillo*, 2000–NMCA–094, 129 N.M. 674, 11 P.3d 1236, there are issues of material fact about whether Miera's shooting death arose out of the use of Yate's Mustang.

{12} Though Safeco argues a different interpretation of the facts, other surrounding facts support a view of Yates' conduct that night that could support a jury's finding him legally culpable. Yates and McGrew had been drinking that afternoon, and Yates regarded McGrew as a "crack-head" with a "reputation for violence" who "doesn't think straight." Neither party disputes that Yates had his pistol in the car, in a location accessible to McGrew, and that Yates' pistol was the one with which McGrew fatally shot Miera. Yates kept the gun in the car because he had been shot at in the past. Twenty-eight cartridges and casings from different calibers of ammunition were taken from his car by the police. Because Yates believed that McGrew's collection of guns was mostly stolen, Yates told McGrew that he would bring his gun so McGrew would not need to bring one of his own. Yates stated that he did not want to be stopped by the police with a stolen gun in his car. At the same time, he made a U-turn to come up behind the Tahoe, thinking that its occupants were either "flipping us off" or "flagging us down," either one of which had potential for a confrontation of some sort.

{13} These facts, though disputed, could fairly establish Yates' culpability and connection to McGrew's use of the gun. The next step is to evaluate the connection between Yates' behavior and the use or operation of the car.

{14} To avoid summary judgment the incident must be shown to "arise out of the ownership . . . or use of the uninsured motor vehicle[.]" As Yates and McGrew drove around that night, Yates' car amounted to little more than a holster on wheels. It held both a person and an instrumentality Yates knew to be dangerous—McGrew and a large-caliber handgun. Plaintiff can fairly argue that Yates used the car to maneuver to a point that accelerated the confrontation with Miera and Baros. This passes *Britt's* test requiring Yates' "active participation in or facilitation of the passenger's commission of the harmful act." *Britt*, 120 N.M. at 818, 907 P.2d at 999.

{15} There are triable issues of fact about whether the Mustang was used to initiate

contact with the Tahoe; whether using the Mustang to carry the accessible weapon resulted in the Mustang being used to facilitate McGrew's intentional tort; and thus whether the incident was shown to "arise out of the ownership ... or use of the uninsured motor vehicle." Therefore, the district court erred in granting summary judgment in favor of Safeco.

## CONCLUSION

{16} We affirm the summary judgment entered in favor of State Farm and reverse the summary judgment in favor of Safeco.

{17} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and MICHAEL E. VIGIL, Judges.