Certiorari Denied, June 25, 2014, No. 34,732

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2014-NMCA-077

Filing Date: April 30, 2014

Docket No. 32,779

SHERYL WILKESON,

      Plaintiff-Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Defendant-Appellee.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Nan G. Nash, District Judge

Barnhill Law Office, L.L.C.
Lynn A. Barnhill
Albuquerque, NM

for Appellant

Guebert Bruckner P.C.
Don Bruckner
Christopher J. DeLara
Albuquerque, NM

for Appellee

OPINION

WECHSLER, Judge.

{1}    We address in this appeal the viability of an anti-stacking provision in a California automobile insurance policy when the accident giving rise to an uninsured motorist claim occurred in New Mexico. The provision is valid and enforceable under California law. In

*Shope v. State Farm Insurance Co.*, 1996-NMSC-052, 122 N.M. 398, 925 P.2d 515, our Supreme Court held that an anti-stacking provision valid in another state was a question of contract interpretation governed by the law of the other state and not a matter of fundamental interests so as to require application of New Mexico public policy. This case is governed by *Shope*, and we affirm the ruling of the district court dismissing the claim for additional coverage.

**FACTS**

**{2}**     Plaintiff Sheryl Wilkeson and Defendant Paul Baca were involved in an automobile accident in Albuquerque, New Mexico. Baca was uninsured, and Plaintiff was a named insured on an automobile insurance policy issued by Defendant State Farm Mutual Automobile Insurance Company (State Farm) that covered the car Plaintiff was driving. Plaintiff also was a named insured on a separate State Farm policy that covered another vehicle. Separate premiums were paid. At the time of the accident, Plaintiff owned homes in both California and New Mexico, but resided in New Mexico. Both policies were issued to Plaintiff while she resided in California, and the policy covering the car in the accident, the only policy of record, lists her California address. Plaintiff did not know whether she informed State Farm that she had moved to New Mexico before the accident. She did not change the location of her policy from California to New Mexico until after the accident.

**{3}**     Both policies provided uninsured motor vehicle coverage, subject to limits of liability of $50,000 per person and $100,000 per accident. They provided that the "limits of liability are not increased because . . . more than one vehicle [or person] is insured under [the] policy[.]" They further stated:

> If uninsured motor vehicle coverage for bodily injury is available to an insured from more than one policy provided by us or any other insurer, the total limit of liability available from all policies provided by all insurers shall not exceed the limit of liability of the single policy providing the highest limit of liability. This is the most that will be paid regardless of the number of policies involved, persons covered, claims made, vehicles insured, premiums paid or vehicles involved in the accident.

**PROCEDURAL BACKGROUND**

**{4}**     The claims against Baca were settled, and he was dismissed from the case. State Farm thereafter filed a motion for summary judgment, stating that it had paid Plaintiff the liability limit of $50,000 under the policy. It argued that the policy did not permit the stacking of uninsured motorist benefits and that the district court should apply *Shope* and dismiss the complaint. Plaintiff responded with a cross-motion for summary judgment. She contended that *Shope* did not apply because California law conflicted with New Mexico law and public policy and that the district court should apply New Mexico law. After conducting a hearing, the district court granted State Farm's motion, denied Plaintiff's counter-motion,

2

and dismissed the complaint. Plaintiff appeals.

**CHOICE OF LAW**

**{5}** Generally, in determining the appropriate law to apply when an accident occurs in one state and an insurance contract has been entered in another, the law of the place of the accident applies to determine the plaintiff's right to recover from the negligent party, and the law of the place of the contract, the *lex loci contractus*, applies to interpret the terms of the contract. *State Farm Auto. Ins. Co. v. Ovitz*, 1994-NMSC-047, ¶ 8, 117 N.M. 547, 873 P.2d 979; *Demir v. Farmers Texas Cnty. Mut. Ins. Co.*, 2006-NMCA-091, ¶ 7, 140 N.M. 162, 140 P.3d 1111. Thus, in this case, New Mexico law would apply concerning issues of negligence and damages, and California law would govern as to issues pertaining to the insurance policies, including the scope of the language limiting Plaintiff's ability to stack uninsured motorist coverages. The parties do not dispute that, under California law, Plaintiff would not be able to stack the coverages in the policies.

**{6}** The selection of the choice of law as between the right to recover and the law of the contracting state, however, does not fully resolve the analysis when there is an issue of conflicting public policies. In this regard, even though the forum state would be otherwise required to apply the law of the other state, if that law were so conflicting with the public policy of the forum state, it could properly apply its law rather than the law of the other state. *Demir*, 2006-NMCA-091, ¶ 8. Plaintiff makes this argument in this case. She asserts that notwithstanding the law of California as the place of the contract, which would recognize the liability limitation of her policies, New Mexico's public policy favoring stacking requires this Court to apply that public policy as opposed to the California law. She raises a question of law that we address under de novo review. *See Miera v. State Farm Mut. Auto. Ins. Co.*, 2004-NMCA-059, ¶ 6, 135 N.M. 574, 92 P.3d 20 ("The question of whether application of the law to undisputed facts supports summary judgment in a case seeking to benefit from [uninsured motorist] coverage is a question we review de novo.").

**CONFLICTING STATE POLICIES**

**{7}** Stacking is the "recovery of damages under more than one policy, endorsement or coverage by placing one . . . upon another and recovering from each in succession until either all . . . damages are satisfied or until the total limits of all policies, endorsements, coverages, etc. are exhausted[.]" *Lopez v. Found. Reserve Ins. Co.*, 1982-NMSC-034, ¶ 7, 98 N.M. 166, 646 P.2d 1230 (internal question marks and citation omitted), *holding modified on other grounds by Montano v. Allstate Indem. Co.*, 2004-NMSC-020, 135 N.M. 681, 92 P.3d 1255. As relevant to this case, it is the aggregating of uninsured motorist coverages. *Montano*, 2004-NMSC-020, ¶ 2.

**{8}** In New Mexico, stacking is "a judicially-created doctrine" that has arisen in cases in which our Supreme Court has needed to determine whether insurance policy limitations of liability provisions restrict or permit stacking. *Id.* ¶ 17. In *Sloan v. Dairyland Ins. Co.*,

1974-NMSC-019, ¶¶ 3, 6, 86 N.M. 65, 519 P.2d 301, our Supreme Court permitted the stacking of uninsured motorist benefits from two separate policies owned by the same individual when the policy contained limitations if other insurance was available to the insured. In *Lopez*, after determining that the limitation provision of the policy was ambiguous concerning separate premiums for uninsured motorist coverage on two vehicles, the Court applied *Sloan* to coverage of two vehicles within the same insurance policy. *Lopez*, 1982-NMSC-034, ¶ 10. The Court's rationale, which also applies to the circumstances of multiple policies, was that uninsured motorist coverage covers an insured rather than a vehicle, that stacking would fulfill the reasonable expectations of the insured, and that, depending on the facts, separate premiums would justify stacking. *Id.* ¶¶ 16-18.

**{9}** Since these initial cases, our Supreme Court has consistently upheld the availability of stacking, as against policy language excluding it, as a matter of public policy when the insured has paid multiple premiums. *See Montano*, 2004-NMSC-020, ¶ 23. The Court has generally found an ambiguity in the limitation provision that would give rise to judicial construction. *See id.* ¶ 1 (stating that the Court "never upheld an anti-stacking clause in [uninsured motorist] policies because . . . [of] either an ambiguity in the policy or the payment of multiple premiums"). *But see Jimenez v. Found. Reserve Ins. Co.*, 1988-NMSC-052, ¶ 9, 107 N.M. 322, 757 P.2d 792 (holding an anti-stacking provision to be clear and unambiguous). As a general matter, the public policy expressed by our Supreme Court clearly favors stacking when interpreting provisions in an insurance contract that limit it. *Montano*, 2004-NMSC-020, ¶¶ 15, 17 (recognizing the public policy in favor of stacking); *id.* ¶¶ 23, 27 (stating that "when multiple premiums are charged for [uninsured motorist] coverage on multiple cars, even in the face of a truly unambiguous limitation-of-liability clause, stacking will be required[,]" but concluding that the plaintiff was entitled to stack because of an ambiguity concerning the basis for the premium); *Rodriguez v. Windsor Ins. Co.*, 1994-NMSC-075, ¶ 1, 118 N.M. 127, 879 P.3d 759 (stating that New Mexico has "a strong judicial policy, rooted in this state's uninsured motorists insurance statute, favoring stacking" (citation omitted)), *modified on other grounds by Montano*, 2004-NMSC-020.

**{10}** California does not have the same public policy. Its insurance code specifically permits that stacking may be precluded, providing:

> [T]he policy or endorsement may provide that if the insured has insurance available to the insured under more than one uninsured motorist coverage provision, any damages shall not be deemed to exceed the higher of the applicable limits of the respective coverages, and the damages shall be prorated between the applicable coverages as the limits of each coverage bear to the total of the limits.

Cal Ins. Code § 11580.2(d) (2006). The parties agree that the California insurance code has been interpreted to prohibit stacking.

**APPLICABILITY OF *SHOPE***

4

**{11}** Our Supreme Court in *Shope* addressed the choice of law analysis to be applied when New Mexico law on stacking differs from the law in the state where the contract was formed. In that case, our Supreme Court considered whether to apply New Mexico's public policy favoring stacking of coverage in underinsured motorist cases rather than a Virginia law that permitted stacking of insurance coverage "unless clear and unambiguous language in the policy" prevented it. *Shope*, 1996-NMSC-052, ¶¶ 6, 7. The language of the policy clearly and unambiguously prevented stacking. *Id.* ¶ 6. Our Supreme Court explained the analysis necessary to determine the choice of law to be applied as one that balances competing policies. *Id.* ¶ 9. On the one hand is "the policy of New Mexico . . . to interpret insurance contracts according to the law of the place where the contract was executed." *Id.* On the other, is "public policy favoring a different interpretation." *Id.* The Court held that, in order to overcome the New Mexico policy of interpreting insurance contracts under the law of the place where the contract was executed, "there must be a countervailing interest that is fundamental and separate from general policies of contract interpretation." *Id.* It held that stacking of insurance coverage was "a question of contract interpretation, not one of fundamental interests," and applied Virginia law. *Id.* ¶¶ 9, 10.

**{12}** Plaintiff argues that this Court should not follow *Shope* for two reasons—(1) it is distinguishable from this case, and (2) subsequent cases, *State Farm Mutual Automobile Insurance Co. v. Ballard*, 2002-NMSC-030, 132 N.M. 696, 54 P.3d 537, and *Demir*, indicate that the application of California's law "will result in a violation of fundamental principles of justice." We discuss Plaintiff's argument in turn.

## Distinguishing *Shope*

**{13}** Plaintiff contends that this case is different from *Shope* with regard to the law of the state of the contract. According to Plaintiff, in *Shope*, both New Mexico and Virginia permitted stacking unless clear and unambiguous language in the policy prevented it. Plaintiff reasons that "[p]ublic policy was not *truly* implicated because Virginia's laws did not conflict with those of New Mexico, unlike the laws of California" in the present case. We cannot agree that the difference between Virginia and California law distinguishes *Shope* from this case. The important teachings of *Shope* are that (1) we will apply the law of the place where the contract was executed unless the law of another relevant state has a countervailing fundamental interest separate from contract interpretation principles and (2) the question of stacking is one of contract interpretation only.

## Subsequent Cases

**{14}** Since *Shope*, both our Supreme Court and this Court have decided cases that addressed whether another New Mexico public policy should trump its policy of applying the law of another state where an automobile insurance contract was executed. Plaintiff argues that these cases are more analogous to this case than *Shope* and demonstrate that the countervailing New Mexico policy should also be followed in this case.

5

**{15}** In *Ballard*, a Georgia resident executed an insurance policy in Georgia that contained a family step-down provision that precluded liability for bodily injury to a household family member unless intra-familial tort liability did not apply, in which event, liability would be limited to the amount required by law. 2002-NMSC-030, ¶¶ 3-4. The insured's daughter was injured in a single-car accident in New Mexico. *Id.* ¶ 2. The insurer, acknowledging that intra-familial tort immunity was invalid in New Mexico, sought a declaration that recognized the policy limitation and limited its liability to the amount required under the New Mexico Mandatory Financial Responsibility Act, NMSA 1978, §§ 66-5-201 to -39 (1978, as amended through 2013) (NMMFRA). *Ballard*, 2002-NMSC-030, ¶¶ 6-7. Our Supreme Court, in analyzing whether to apply the law of Georgia, the state of contract execution, discussed its decision in *Estep v. State Farm Mutual Automobile Insurance Co.*, 1985-NMSC-069, 103 N.M. 105, 703 P.2d 882, in which it "reiterated the abandonment of the common law rule of interspousal immunity" as an "archaic precept." *Ballard*, 2002-NMSC-030, ¶ 11 (internal quotation marks and citation omitted). It emphasized that an exclusion based on the archaic rule violated not only the NMMFRA but also the New Mexico policy of protecting innocent accident victims. *Id.* The Court applied the analysis of *Shope* and held, on balance, that the rule that required applying the law of the state of contract execution should give way because family exclusion provisions such as those in the Georgia policy, "whether limiting or completely excluding benefits based on familial status, violate public policy and fundamental principles of justice." *Ballard*, 2002-NMSC-030, ¶¶ 15, 18.

**{16}** *Demir* involved a Texas insurance policy that, in conformance with Texas law, required physical contact for recovery of uninsured motorist benefits. 2006-NMCA-091, ¶¶ 2-3. This Court acknowledged that Texas law would apply unless, as set out in *Shope*, it "would result in a violation of fundamental principles of justice of New Mexico." *Demir*, 2006-NMCA-091, ¶ 8 (internal quotation marks and citation omitted). This Court analyzed that issue applying *Ballard* and *Sandoval v. Valdez*, 1978-NMCA-016, ¶¶ 19, 23, 91 N.M. 705, 580 P.2d 131, in which we applied New Mexico law to a Colorado insurance contract that limited the insured's time to sue to one year from the date of an accident. *Demir*, 2006-NMCA-091, ¶¶ 18, 20, 23. We stated in *Demir* that, although the public policy at issue may not have risen to the level of a fundamental principle of justice, it nevertheless implicated a substantial public policy. 2006-NMCA-091, ¶ 23. We held that Texas law did not apply because the exclusion of uninsured motorist coverage for accidents not involving physical contact violated New Mexico public policy protecting accident victims, as expressed in the NMMFRA. *Id.* ¶ 23.

**{17}** Plaintiff argues, using the language of *Demir*, that this case also implicates the " 'substantial public policy' of protecting innocent accident victims." She cites *Montano*, in which our Supreme Court, in adopting a new approach that requires an insurer to "obtain written rejections of stacking in order to limit its liability based on an anti-stacking provision[,]" reiterated the public policy in favor of stacking when an insured has paid separate premiums. *Montano*, 2004-NMSC-020, ¶¶ 9, 19. Significantly, however, *Montano* is not a choice of law case; it concerned issues of contract interpretation with respect to the

availability of stacking. *See id.* ¶ 28 (concluding that the insurance contract at issue did not satisfy existing requirements to exclude stacking and requiring insurers in the future to obtain written rejections of stacking). *Shope* specifically addressed such cases, indicating that "[w]hile we interpret New Mexico insurance contracts to avoid repugnancy in clauses that prohibit stacking of coverages for which separate premiums have been paid, this rule is one of contract interpretation that does not rise to the level of a fundamental principle of justice." 1996-NMSC-052, ¶ 9. Further, *Montano* specifically addressed *Shope*, distinguishing it in part by stating "that our policy in favor of stacking is not 'fundamental' for purposes of a choice-of-law analysis does not mean that it is unimportant." *Montano*, 2004-NMSC-020, ¶ 26. We agree with that analysis. Although there is an important public policy favoring stacking that, as in the line of cases stemming from *Sloan* and *Lopez* and as stated in *Montano*, may outweigh conflicting concerns within the same or related insurance policies, it does not alter the New Mexico policy to interpret insurance contracts according to the law of the place where the contract is executed. *Shope*, 1996-NMSC-052, ¶ 9.

**{18}** Additionally, the cases upon which Plaintiff relies, *Ballard* and *Demir*, are not stacking cases, and we consider the public policies involved in those cases to carry greater weight when balanced against the policy to interpret insurance contracts according to the law of the contracting state. *Ballard* considered the interest involved to concern fundamental principles of justice because of the archaic nature of intra-familial tort immunity. 2002-NMSC-030, ¶¶ 10-11. In *Demir*, the single-car exclusion would have foreclosed any action for relief, and this Court expressed that such an exclusion had greater significance than the policy favoring stacking. 2006-NMCA-091, ¶ 22. Indeed, stacking is still a benefit that an insured can reject. *See Montano*, 2004-NMSC-020, ¶ 19 (allowing written rejection of stacking in future cases).

**{19}** Plaintiff also argues, citing *Lopez*, that she paid separate premiums for the coverage of the two policies, and, therefore, fairness would indicate that she be permitted to stack the coverages. *See Lopez*, 1982-NMSC-034, ¶ 18 ("[I]t is only fair that the insured be permitted to stack the coverages for which he has paid."). *Lopez*, of course, is not a choice of law case. In *Shope*, our Supreme Court rejected the argument that "the law of the place where the accident occurred should govern [the] analysis of [the insureds'] expectations of stacking[.]" 1996-NMSC-052, ¶ 8.

**CONCLUSION**

**{20}** We affirm the district court's grant of summary judgment dismissing Plaintiff's claim for additional coverage.

**{21} IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

7

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**CYNTHIA A. FRY, Judge**