The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>April 25, 2022</u>

**No. A-1-CA-38632**

**JENNIFER MCKINLEY, as Personal
Representative of the ESTATE OF
WILLIAM MCKINLEY,**

      Plaintiff-Appellant,

v.

**INTERINSURANCE EXCHANGE OF
THE AUTOMOBILE CLUB and
FARMERS INSURANCE COMPANY
OF ARIZONA,**

      Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Lisa C. Ortega, District Judge**

Plotsky & Dougherty, P.C.
David L. Plotsky
Albuquerque, NM

L. Helen Bennett
Albuquerque, NM

for Appellant

Eaton Law Office, P.C.
James P. Barrett

Albuquerque, NM

for Appellee Interinsurance Exchange of the Automobile Club

Hatcher Law Group, P.A.
Scott P. Hatcher
Santa Fe, NM

for Appellee Farmers Insurance Company of Arizona

**OPINION**

**WRAY, Judge.**

{1}     Plaintiff Jennifer McKinley, on behalf of the Estate of William McKinley, appeals the district court's grant of summary judgment in favor of Interinsurance Exchange of the Automobile Club (Auto Club) and Farmers Insurance Company of Arizona (FICA) (collectively, Defendants). Plaintiff additionally brought claims against Defendants Tyler Hernandez and Craig Whited (collectively, the Hernandez Defendants), which were dismissed by stipulation.

{2}     The sole issue on appeal is whether the district court correctly ruled, based on stipulated facts, that the intentional stabbing of William McKinley was not covered by either of the identified uninsured/underinsured motorist (UM/UIM) policies under which he could be considered an insured. Our Supreme Court's standard, set forth in *Britt v. Phoenix Indemnity Insurance Company*, 1995-NMSC-075, 120 N.M. 813, 907 P.2d 994, has long been applied to evaluate whether a UM/UIM insurance policy includes coverage for an intentional tort committed by an uninsured or

underinsured tortfeasor. Applying *Britt*, we conclude that the stipulated facts in the present case did not demonstrate that the Hernandez Defendants used the vehicle to facilitate the harm. We therefore affirm.

**BACKGROUND**

{3}     For the purposes of summary judgment, the relevant facts were stipulated in the district court and before us on appeal. On December 26, 2015, the Hernandez Defendants drove to a neighborhood in an uninsured vehicle and carried out a series of car burglaries. Around 4:00 a.m., the Hernandez Defendants parked the uninsured vehicle at the bottom of Mr. McKinley's driveway, walked up the driveway to Mr. McKinley's parked truck, and broke a window. Mr. McKinley caught the Hernandez Defendants stealing property from his truck. As the Hernandez Defendants fled, they dropped some of the stolen property at the bottom of Mr. McKinley's driveway but managed to get his tool bag into the uninsured vehicle. Mr. McKinley chased the Hernandez Defendants into the uninsured vehicle and fought with them there. During the fight, one of the Hernandez Defendants stabbed Mr. McKinley, and they both drove off in the uninsured vehicle. Mr. McKinley died from his injuries later that day. Hernandez was criminally charged and convicted for Mr. McKinley's death.

{4}     Because the Hernandez Defendants' vehicle was uninsured or minimally insured, Plaintiff brought claims for UM/UIM coverage under two policies issued

by Defendants. The FICA policy regarding "Uninsured Motorist Coverage (Including Underinsured Motorist Coverage)" stated:

> We will pay all sums which an insured person is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of . . . [b]odily injury sustained by the insured person. The bodily injury must be caused by accident and arise out of the ownership, maintenance or use of the uninsured motor vehicle.

The Auto Club policy contained similar language. Defendants moved for summary judgment and argued that no coverage existed, because Mr. McKinley's injuries did not arise from the "use" of an uninsured vehicle. Plaintiff filed a similar cross-motion for partial summary judgment. All three motions sought a ruling based on competing analyses of essentially stipulated material facts. The district court granted Defendants' motions and denied Plaintiff's motion. Plaintiff appeals from the district court's order granting Defendants' motions.

## DISCUSSION

{5}     Plaintiff's claims for coverage arise from the two UM/UIM policies. UM/UIM coverage is governed both by the language of the insurance policy itself and by New Mexico's uninsured motorist statute. NMSA 1978, § 66-5-301 (1983). The *Britt* Court explained that generally "the uninsured motorist statute and contracts arising thereunder should be construed liberally in favor of coverage in order to implement the remedial purposes behind that statute." 1995-NMSC-075, ¶ 11. That purpose is "to expand insurance coverage and to protect individual members of the public

against the hazard of culpable uninsured motorists." *Id.* (internal quotation marks and citation omitted). Because of these statutory policies, the burden to establish UM/UIM coverage may be "something less" than the burden to prove liability when making "an *insured* motorist claim." *Id.* ¶ 12. Nevertheless, to establish coverage under the policy, the injuries must arise from "the use of an uninsured vehicle." *Id.* ¶¶ 3, 15. The *Britt* test thus seeks a balance between the broad protections of the UM/UIM statute and the requirements of the insurance contract. *See id.* ¶¶ 9, 15-16.

{6}     The parties agree the *Britt* test applies in the present case. As Plaintiff notes, "[t]he parties agreed to have the [d]istrict [c]ourt decide the coverage issue on cross-motions for summary judgment, deciding as a matter of law on stipulated facts." Our role on appeal is therefore to determine whether the district court properly applied the summary judgment standard and the *Britt* test to the stipulated facts, in order to evaluate whether the policies at issues extended coverage as a matter of law to Mr. McKinley's injuries.

## I.     Summary Judgment and the Standard of Review

{7}     "Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Romero Excavation & Trucking, Inc. v. Bradley Const., Inc.*, 1996-NMSC-010, ¶ 4, 121 N.M. 471, 913 P.2d 659 (internal quotation marks and citation omitted). At the summary judgment stage, if the moving party satisfies its initial burden to make a

4

prima facie factual showing warranting summary judgment, "the burden shifts to the non-movant to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 10, 148 N.M. 713, 242 P.3d 280 (internal quotation marks and citation omitted). If the party opposing summary judgment adduces evidence regarding material disputed facts and/or reasonable inferences, summary judgment is inappropriate. *Id.* ¶¶ 10-11. "Even where the basic facts are undisputed, if equally logical but conflicting inferences can be drawn from the facts, summary judgment should be denied." *Fischer v. Mascarenas*, 1979-NMSC-063, ¶ 10, 93 N.M. 199, 598 P.2d 1159.

{8}    The parties in the present case approached summary judgment based on stipulated facts and did not dispute the inferences to be drawn from the facts. Plaintiff asserted additional facts, but did not support them with additional evidence. Although Plaintiff filed a motion for partial summary judgment based on one of the *Britt* requirements, the motion relied on the same evidence Defendants presented in their motions for summary judgment. Plaintiff did not identify for the district court reasonable inferences to be drawn in her favor from the stipulated facts that would create a dispute of fact, nor does she argue to this Court that the district court improperly failed to draw reasonable inferences from the stipulated facts in her favor. When parties stipulate to the facts, as in the present case, on appeal, they "are bound by the facts as stipulated." *Romero Excavation & Trucking, Inc.*, 1996-

5

NMSC-010, ¶ 4. We therefore review the grant of summary judgment de novo and consider whether the district court "correctly applied the law" to the stipulated facts. *See id.* ¶ 5.

## II. The *Britt* Requirements

{9}     The law, in the present case, is the three-part test established in *Britt* and developed in subsequent precedents. In *Britt*, our Supreme Court considered whether UM/UIM policy language that limited coverage to accidents "arising out of the ownership, maintenance, or use of the uninsured motor vehicle" applied to cover injuries resulting from an intentional tort—a stabbing—committed after an uninsured vehicle caused a collision. 1995-NMSC-075, ¶¶ 1-3 (internal quotation marks omitted). The *Britt* Court determined that the stabbing was an "accident" under the policy, *id.* ¶ 8, and subsequently adopted a three-part test to determine "whether intentional conduct and its resulting harm arises out of the use of an uninsured vehicle." *Id.* ¶¶ 15-16. This Court recently articulated the three-part test as follows:

> (1) whether a sufficient causal connection exists between the use and the harm, which requires that the vehicle be an active accessory in causing the injury; (2) whether an act of independent significance has broken the causal link; and (3) whether the use to which the vehicle was put was a normal use of that vehicle.

*Haygood v. United Servs. Auto. Ass'n*, 2019-NMCA-074, ¶¶ 10, 12, 453 P.3d 1235 (alterations, quotation marks, and citation omitted). A court may only determine that

the "causal connection required by statutory and policy language has been established and that coverage exists" if the analysis of each of the three requirements results "favorably for the insured." *Id.* ¶ 10. In the present case, the district court relied on the second *Britt* requirement and determined that "independent acts of significance broke any causal link between the use of the uninsured vehicle and the intentional stabbing." We agree, but first consider the *Britt* holding in greater detail.

{10}    In *Britt*, our Supreme Court considered the impact of an intentional tort on UM/UIM coverage. *See* 1995-NMSC-075, ¶ 1. In *Britt*, the plaintiff was a passenger in a vehicle that was struck from behind by an uninsured vehicle, after which the plaintiff was stabbed by a passenger from the uninsured vehicle. *Id.* ¶¶ 1-2. Our Supreme Court determined that (1) "there well may have been a sufficient causal link between the use of the uninsured vehicle for transportation and [the plaintiff's] injuries," and (2) "transportation would be a normal use." *Id.* ¶¶ 15-16. Whether, however, the "attack by the passengers" from the uninsured vehicle independently broke the causal link between the use of the vehicle and the injury depended on the intent of the driver of the uninsured vehicle. *Id.* ¶ 16. The Court explained that the causal link would remain intact if the uninsured driver rear-ended the front vehicle "in complicity with the assailants or in order to facilitate the attack." *Id.* If, however, the intent to attack developed after the collision, the stabbing would have broken "the causal link between the use of the vehicle and [the plaintiff's] injury." *Id.*; *see*

7

*also Haygood*, 2019-NMCA-074, ¶ 16 (applying the intent principles from *Britt* and concluding that "nothing in the record suggests the use of the car as storage facilitated [the] assault and nothing suggests [the assailant] even contemplated the assault in engaging in this use"). Thus, when a normal use of an uninsured vehicle is interrupted by an intentional tort that is a cause of the injury, a UM/UIM policy may still provide coverage if the insured can prove that the vehicle was used to facilitate the circumstances that caused the harm.[1]

{11}     Plaintiff maintains that the Hernandez Defendants used the vehicle to cause the injury, because the vehicle provided the Hernandez Defendants with "access to a deadly weapon," the structure of the car facilitated the attack, and the Hernandez Defendants "were clearly in the process of using the [vehicle] to escape apprehension when the stabbing occurred." Plaintiff contends that "Hernandez was clearly prepared to use deadly force and was able to quickly and easily access a deadly weapon upon entering the [vehicle] to flee the scene." Plaintiff argues that the record does not support a conclusion that the Hernandez Defendants "meant to thieve, not to kill." The stipulated facts, however, do not support an inference that

---

[1]Nothing in *Britt* suggests that the actual outcome, the specific harm, must have been intended in order to establish coverage. The *Britt* Court did not require that the uninsured driver intend for the ultimate stabbing to occur, only that the vehicle was used "to facilitate the attack." 1995-NMSC-075, ¶ 16.

8

the Hernandez Defendants used the vehicle to facilitate an attack on Mr. McKinley, either based on access to the knife, the structure of the car, or the potential for escape.

**{12}** For the Hernandez Defendants to have used the vehicle to facilitate the attack based on the access to weapons, the record would have to indicate at least that the Hernandez Defendants kept weapons in the vehicle to facilitate attacks. In *Miera v. State Farm Mut. Auto. Ins. Co.*, we noted that the vehicle in question "held both a person and an instrumentality" that the uninsured driver "knew to be dangerous." 2004-NMCA-059, ¶ 14, 135 N.M. 574, 92 P.3d 20. The record in the present case does not reveal where or when the knife was acquired. The record does not show whether the knife was on Hernandez's person or in the vehicle, or whether it was acquired during the robberies, was always in the vehicle, or carried for protection. The stipulated facts show only that a knife was used to injure Mr. McKinley after he was at least partially inside the vehicle. In short, the record does not reveal whether the Hernandez Defendants used the vehicle for access to weapons.

**{13}** In *Miera*, access to the weapon was considered in combination with other facts, including the known dangerousness of the passenger and the use of the car "to maneuver to a point that accelerated the confrontation." *Id.* This is similar to Plaintiff's contention that the Hernandez Defendants used the structure of the vehicle to facilitate the attack. The stipulated facts, however, show only that the Hernandez Defendants ran away from Mr. McKinley to the vehicle, Mr. McKinley followed, an

9

altercation occurred inside the vehicle, and Mr. McKinley was fatally stabbed. Using the vehicle to benefit from its inherent characteristics suggests some level of planning or intent to attack that is not logically inferred from the bare stipulated facts in the present case. *See Romero*, 2010-NMSC-035, ¶ 10 ("An inference is not a supposition or a conjecture, but is a logical deduction from facts proved and guess work is not a substitute therefor." (internal quotation marks and citation omitted)); *State Farm Ins. Co. v. Bell*, 39 F. Supp. 3d 1352, 1357-58 (D. N.M. 2014) (describing evidence offered to show the connection between the use of a car's inherent characteristics and harm); *see also Barncastle v. Am. Nat'l Prop. & Cas. Cos.*, 2000-NMCA-095, ¶ 10, 129 N.M. 672, 11 P.3d 1234 (concluding that "[n]o act of independent significance broke the casual chain," when "the vehicle allowed the driver and the shooter to pull alongside [the p]laintiff's vehicle at the red light in an innocent manner," was running at all times, and concealed the identity of the driver and the shooter (internal quotation marks omitted)). Although the evidentiary burden is not high, *see Britt*, 1995-NMSC-075, ¶ 12, and circumstantial evidence may suffice to overcome summary judgment, *see Schneider Nat'l, Inc. v. N.M. Tax'n & Revenue Dep't*, 2006-NMCA-128, ¶ 18, 140 N.M. 561, 144 P.3d 120, some evidence is required to permit an inference that the Hernandez Defendants used the vehicle's inherent characteristics to facilitate the attack on Mr. McKinley.

**{14}** In *Britt*, our Supreme Court required some evidence that the ultimate harm, a stabbing, was connected to use of the uninsured vehicle. 1995-NMSC-075, ¶ 16. The *Britt* Court explained an unbroken connection between the use of an uninsured vehicle, an intentional tort, and an injury could be established by showing the vehicle was used to facilitate the attack. *Id.* Otherwise, the use of the vehicle would be interrupted by the attack itself. *Id.* As this Court stated in *Haygood*, "had the intent to attack [in *Britt*] developed independently of the collision, the attack would have severed any connection between the injury and the earlier qualifying use of the vehicle." 2019-NMCA-074, ¶ 16. In *Haygood*, we affirmed dismissal of the plaintiff's claim because the stipulated facts did not support a conclusion that the asserted normal use of the vehicle created an unbroken causal connection with the attack. *Id.* The *Haygood* plaintiff argued that the "normal use" of storing drugs in the uninsured vehicle was causally connected to the shooting, because the assailant believed the victim was stealing those drugs. *Id.* ¶ 15. We concluded that nothing in the stipulated facts suggested the *Haygood* assailant "even contemplated the assault in engaging in [these] use[s]." *Id.* ¶ 16. Similarly, in the present case, the stabbing of Mr. McKinley interrupted the use of the vehicle to flee, unless Plaintiff could establish that the Hernandez Defendants used the vehicle to facilitate an attack.

**{15}** Plaintiff paints a broad picture of the uses of the vehicle from "transport[ing] the thieves to and from the places they intended to plunder, and then to transport the

11

stolen property," up to using the vehicle "to protect themselves from apprehension by Mr. McKinley by stabbing him in the close confines of the [vehicle] and then using the [vehicle] to facilitate their escape." This broad view of the vehicle's use initially offers an obvious distinction from the facts of *Haygood*, because in *Haygood*, the vehicle remained parked before, after, and during the attack. 2019-NMCA-074, ¶ 2. In contrast, the Hernandez Defendants drove the vehicle before and after the assault in the present case. Neither the stipulated facts, however, nor any reasonable inference, indicates that the Hernandez Defendants anticipated any attack as they used the uninsured vehicle to rob other vehicles, park in Mr. McKinley's driveway, or when they ran toward the vehicle and got inside. Nor does any intended use of the vehicle to flee or protect property, under these circumstances, demonstrate use of the vehicle to facilitate an attack against Mr. McKinley. Without evidence to connect flight or protection of the stolen property to the attack, *see Bell*, 39 F. Supp. 3d at 1357-58, the reasonable inference is that the Hernandez Defendants' attempt at flight was interrupted by the attack on Mr. McKinley.

{16} Thus, if we take Plaintiff's broad view of the stipulated facts, beginning with driving into the neighborhood, no evidence suggests that at that time, the Hernandez Defendants used the vehicle to facilitate the attack on Mr. McKinley, or commit violence generally. *See Miera*, 2004-NMCA-059, ¶¶ 12-14 (considering a sequence of facts to determine that the vehicle "amounted to little more than a holster on

12

wheels"). If we telescope in, and take a more and more narrow view of the events in Mr. McKinley's driveway and the Hernandez Defendants' flight to the uninsured vehicle, evidence that the Hernandez Defendants used the vehicle to facilitate the attack on Mr. McKinley remains elusive. By this point, our view of the stipulated facts has taken us inside the vehicle, with the Hernandez Defendants, Mr. McKinley, and the weapon, with no evidence that the vehicle was started or moving. From here, the stipulated facts in the present case and in *Haygood* bear a striking resemblance to each other: a brutal attack that is situated in a vehicle. 2019-NMCA-074, ¶ 2. We therefore take our direction from *Haygood*'s analysis to hold that the stipulated facts in the record do not satisfy *Britt*. As a result, the circumstances in this case do not trigger coverage under the policies at issue, because Mr. McKinley's death did not arise from the use of an uninsured vehicle as set forth in *Britt* and *Haygood*.

**CONCLUSION**

{17}    We affirm the district court's judgment dismissing Plaintiff's claim for UM/UIM coverage.

{18}    **IT IS SO ORDERED.**


_____
**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

_____
**ZACHARY A. IVES, Judge**


_____
**SHAMMARA H. HENDERSON, Judge**

14