The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: **September 28, 2023**

**No. A-1-CA-38005**

**LINDA GARCIA,**

Plaintiff-Appellant,

v.

**ALLSTATE FIRE AND CASUALTY**
**INSURANCE COMPANY,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Fred Van Soelen, District Court Judge**

Mark S. Sweetman
Clovis, NM

for Appellant

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Jennifer A. Noya
Mia K. Lardy
Albuquerque, NM

for Appellee

**OPINION**

**DUFFY, Judge.**

{1}     This case requires us to determine whether Defendant Allstate Insurance Company's premium structure for uninsured/underinsured motorist (UM/UIM) coverage on a multi-vehicle policy is ambiguous, entitling Plaintiff Linda Garcia to stack her UM/UIM coverages. Plaintiff had selected "non-stacked" UM/UIM coverage on an Allstate selection/rejection form that offered such coverage for a single premium charge, but when Allstate sent Plaintiff the declarations page for her policy, that document listed UM/UIM coverage and premium charges on a vehicle-by-vehicle basis. Plaintiff argues that she is entitled to stack her coverages because she paid multiple premiums and, under well-established law, when multiple premiums are paid, stacked coverage must be provided. The district court resolved the matter in favor of Allstate and entered summary judgment on the basis that Allstate had obtained a valid rejection of stacked UM/UIM coverage as a matter of law. We conclude the insurance contract at issue is ambiguous as to whether multiple premiums were charged and hold that Plaintiff is entitled to stack her coverages. In light of this conclusion, it is unnecessary to address the parties' remaining arguments pertaining to whether there was a valid written offer of UM/UIM coverage, and whether Plaintiff's rejection was properly incorporated into the policy. We reverse and remand for further proceedings.

## BACKGROUND

{2} Plaintiff originally insured a single vehicle with Allstate in March 2016. She added a second vehicle to her policy later that year. At that time, Plaintiff's agent had her execute a UM/UIM selection/rejection form. The document included an "Important Notice" that stated, "The coverage limits you select here will apply to each vehicle . . . listed on your Policy Declarations." The notice went on to state that

> [i]f you elect to purchase stacked Uninsured Motorists Insurance for Bodily Injury, the applicable limits for each motor vehicle shown on your Policy Declarations for this policy are added together (stacked) to determine the total amount of available coverage. If you elect to purchase non-stacked Uninsured Motorists Insurance for Bodily Injury, the total amount of available coverage is limited to the amount shown on your Policy Declarations for the vehicle involved in the loss. If the loss occurs while occupying someone else's vehicle, or if you are struck as a pedestrian, the highest limit of Uninsured Motorists Insurance for Bodily Injury available for any one vehicle on the policy will apply.

The selection/rejection form gave Plaintiff two options with respect to UM/UIM bodily injury coverage: she could select either (1) *stacked* coverage with limits of $25,000/$50,000 "for all vehicles on the policy, for $168.05," or (2) *non-stacked* coverage with limits of $25,000/$50,000 "for all vehicles on the policy, for $89.13." Plaintiff selected "non-stacked" UM/UIM coverage.

{3} Allstate sent an amended automobile policy declarations to Plaintiff, which listed each vehicle as having UM/UIM bodily injury coverage with limits of $25,000 per person, $50,000 per accident. The declarations page also showed a premium charge associated with the UM/UIM coverage on each vehicle. For the policy period

at issue in this case, the declarations page showed a UM/UIM premium charge in the amount $47.05 for the first vehicle and $55.55 for the second vehicle. The declarations page also stated, "Uninsured Motorists Insurance Bodily Injury limits of insured vehicles may not be stacked." A portion of the declarations page is reproduced in relevant part below.

## Coverage detail for 2002 Chevy Trk Tahoe

| Coverage | Limits | Deductible | Premium |
|---|---|---|---|
| Automobile Liability Insurance | | Not applicable | $344.92 |
| Bodily Injury | $25,000 each person $50,000 each occurrence | | |
| Property Damage | $25,000 each occurrence | | |

| Coverage | Limits | Deductible | Premium |
|---|---|---|---|
| Auto Collision Insurance | Not purchased* | | |
| Auto Comprehensive Insurance | Not purchased* | | |
| Rental Reimbursement | Not purchased* | | |
| Roadside Help | $100 each disablement | Not applicable | $8.00 |
| Uninsured Motorists Insurance | | | $47.05 |
| Bodily Injury | $25,000 each person $50,000 each accident | Not applicable | |
| Property Damage | $25,000 each accident | $250 | |
| Uninsured Motorists Insurance Bodily Injury limits of insured vehicles may not be stacked. | | | |
| Automobile Medical Payments | $5,000 each person | Not applicable | $25.30 |
| Sound System | Not purchased* | | |
| Tape | Not purchased* | | |
| Total premium for 2002 Chevy Trk Tahoe | | | $425.27 |

3

## Coverage detail for 2004 Dodge Neon

| Coverage | Limits | Deductible | Premium |
|---|---|---|---|
| Automobile Liability Insurance | | Not applicable | $226.50 |
|   Bodily Injury | $25,000 each person<br>$50,000 each occurrence | | |
|   Property Damage | $25,000 each occurrence | | |
|   Auto Collision Insurance | Not purchased* | | |
|   Auto Comprehensive Insurance | Not purchased* | | |
|   Rental Reimbursement | Not purchased* | | |
| Roadside Help | $100 each disablement | Not applicable | $8.00 |
| Uninsured Motorists Insurance | | | $55.55 |
|   Bodily Injury | $25,000 each person<br>$50,000 each accident | Not applicable | |
|   Property Damage | $25,000 each accident | $250 | |
| Uninsured Motorists Insurance Bodily Injury limits of insured vehicles may not be stacked. | | | |
|   Automobile Medical Payments | $5,000 each person | Not applicable | $34.62 |
|   Sound System | Not purchased* | | |

| Coverage | Limits | Deductible | Premium |
|---|---|---|---|
| Tape | Not purchased* | | |
| Total premium for 2004 Dodge Neon | | | $324.67 |

{4} In December 2016, Plaintiff was hit by a car while walking on a crosswalk. Following the accident, Plaintiff submitted a claim for UM/UIM benefits to Allstate and sought stacked coverage with a combined limit of $50,000. Allstate declined Plaintiff's request to stack, and she filed suit.

{5} The parties filed cross motions for summary judgment. Plaintiff sought a declaration that she is entitled to $50,000 in stacked UM/UIM bodily injury coverage, while Allstate argued that Plaintiff was not entitled to stacked coverage because she had executed a valid rejection. As part of this summary judgment briefing, Plaintiff included the following undisputed material fact: "[Plaintiff] paid a premium of $47.05 for UM/UIM coverage on one vehicle and a premium of $55.55 for UM/UIM coverage on her other vehicle." Allstate did not contest this fact. The

4

district court granted Allstate's motion, concluding that Plaintiff had selected "non-stacked" UM/UIM coverage and Allstate "complied with all requirements for a valid rejection of uninsured motorist coverage." Plaintiff timely appealed to this Court.

**DISCUSSION**

**I.      Standard of Review**

{6}      We review the grant or denial of summary judgment de novo. *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 5, 137 N.M. 339, 110 P.3d 1076. "Summary judgment is appropriate when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Id.* In reviewing the grant of summary judgment, this Court must "examine the whole record, considering the facts and drawing all reasonable inferences in a light most favorable to the nonmoving party." *Potter v. Pierce*, 2015-NMSC-002, ¶ 8, 342 P.3d 54.

**II.      Allstate's Premium Structure Is Ambiguous**

{7}      UM/UIM coverage "protects against bodily injury and does not relate to coverage of a particular vehicle." *Lopez v. Found. Reserve Ins. Co.*, 1982-NMSC-034, ¶ 12, 98 N.M. 166, 646 P.2d 1230; NMSA 1978, § 66-5-301 (1983). As our Supreme Court colorfully noted, "The uninsured motorists protection covers the insured and the family members while riding in uninsured vehicles, while riding in commercial vehicles, while pedestrians or while rocking on the front porch." *Chavez v. State Farm Mut. Auto. Ins. Co.*, 1975-NMSC-011, ¶ 11, 87 N.M. 327, 533 P.2d

100 (internal quotation marks and citation omitted). While "each of several vehicles insured under a single policy [can] be covered by one minimum coverage," *Lopez*, 1982-NMSC-034, ¶ 13, nothing precludes insureds from purchasing additional coverage. *See Montano v. Allstate Indem. Co.*, 2004-NMSC-020, ¶ 19, 135 N.M. 681, 92 P.3d 1255.

{8}     Under a line of authority dating back more than forty years, our Supreme Court has consistently held that where an insurance company charges a separate UM/UIM premium for each vehicle under a multi-vehicle policy, "it is only fair that the insured be permitted to stack the coverages for which he has paid." *Lopez*, 1982-NMSC-034, ¶ 18; *accord Jimenez v. Found. Rsrv. Ins. Co.*, 1988-NMSC-052, ¶ 11, 107 N.M. 322, 757 P.2d 792 (noting that "case law in this jurisdiction repeatedly has stated the public policy [that] allows uninsured/underinsured motorist coverage to be stacked when separate premiums are paid for additional coverage"); *Rodriguez v. Windsor Ins. Co.*, 1994-NMSC-075, ¶ 11, 118 N.M. 127, 879 P.2d 759 ("We have permitted stacking of uninsured motorist coverages when separate premiums have been paid on the rationale that separate premiums for separate coverages entitle the insured to the benefit of what he or she has paid for." (internal quotation marks and citation omitted)); *Montano*, 2004-NMSC-020, ¶ 23 ("[W]hen multiple premiums are charged for UM coverage on multiple cars, even in the face of a truly unambiguous limitation-of-liability clause, stacking will be required."); *see also*

*Wilkeson v. State Farm Mut. Auto. Ins. Co.*, 2014-NMCA-077, ¶ 9, 329 P.3d 749 (observing that our Supreme Court "has consistently upheld the availability of stacking, as against policy language excluding it, as a matter of public policy when the insured has paid multiple premiums"). Simply put, an insured is entitled to the number of coverages for which he or she pays a premium.

{9}     As the cases above illustrate, insurance companies have attempted to avoid stacking through a variety of measures. Before *Montano*, these measures included anti-stacking clauses in the insurance policy and premium structures that "purport to avoid a separate charge for the coverage with respect to each car." 2004-NMSC-020, ¶ 12 (internal quotation marks and citation omitted). The *Montano* Court observed that "[a]lthough we have reviewed several such attempts by the insurance industry in the past, . . . this Court has never upheld an anti-stacking clause in UM policies because in each case we found either an ambiguity in the policy or the payment of multiple premiums." *Id.* ¶ 1. Concluding that the practice of attempting to draft standard contract language to preclude stacking was insufficient to protect the reasonable expectations of insureds, particularly "[i]n the face of increasingly complex insurance contracts and pricing strategies," the *Montano* Court charted a new course. *Id.* ¶ 17. It held that "a solution to the seemingly inherent ambiguities in anti-stacking clauses" is to require an insurance company to "obtain written

rejections of stacking in order to limit its liability based on an anti-stacking provision." *Id.* ¶ 19.

{10}　To explain "the policy language requirements for future stacking cases," *id.* ¶ 22, the Court offered an example of how insurance companies could obtain a rejection of stacked coverage:

> As an illustration of our holding, in a multiple-vehicle policy insuring three cars, the insurer shall declare the premium charge for each of the three UM coverages and allow the insured to reject, in writing, all or some of the offered coverages. Thus, hypothetically, in the case of a $25,000 policy, if the premium for one UM coverage is $65, two coverages is an additional $60, and three coverages $57 more, the insured who paid all three (for a total premium of $182) would be covered up to $75,000 in UM bodily injury coverage. However, the insured may reject, in writing, the third available coverage and pay $125 for $50,000 of UM coverage; or the insured may reject, in writing, the second and third coverages and pay $65 for $25,000 of UM coverage; or the insured may reject all three UM coverages.

*Id.* ¶ 20. The Court concluded this example by emphasizing that "[i]n any event, the coverage would not depend on which vehicle, if any, was occupied at the time of the injury. Thus, the insured's expectations will be clear, and an insured will only receive what he or she has paid for." *Id.*

{11}　While the *Montano* Court optimistically believed this change would end litigation in this area of law, *id.* ¶ 1, we are here again determining whether stacking is required. In this case, Allstate offered a higher premium for "stacked" coverage and a lower premium for "non-stacked" coverage with both providing "$25,000/$50,000/$25,000 for all vehicles on the policy." Plaintiff selected "non-

stacked" coverage on the selection/rejection form with the cost for that coverage shown as a single premium. The declarations page for the policy, however, showed a per-vehicle charge for UM/UIM coverage. Plaintiff argues she paid separate premiums for each insured vehicle and, under the line of cases outlined in paragraph eight of this opinion, is entitled to stack her coverages. Allstate does not challenge the legal principle that stacking is required when multiple premiums are charged. Instead, Allstate maintains that it charged only one premium for one coverage, and simply allocated the cost of that premium among the insured vehicles. Our Supreme Court has encountered versions of this issue at least twice before, in *Rodriguez* and in *Montano*; in both cases the Court determined that the policies were ambiguous and, as a result, stacking was required. *See Rodriguez*, 1994-NMSC-075, ¶¶ 2, 22; *Montano*, 2004-NMSC-020, ¶¶ 1, 27. We reach the same conclusion here.

{12}     In *Rodriguez*, the plaintiff insured three vehicles under a policy that purported to charge a single premium for UM/UIM coverage. 1994-NMSC-075, ¶¶ 3, 5. The declarations page stated that "INSURANCE IS PROVIDED WHERE A PREMIUM IS SHOWN FOR THE COVERAGE," and "below this statement was a grid or matrix of lines and columns showing the various types and amounts of coverage, with the premium charged for each." *Id.* ¶ 5. The grid showed a premium of $131.00 on the line for UM/UIM coverage under the first vehicle and the word "INCL" (or included) for the other two vehicles. *Id.* ¶ 5 n.1. The Court determined that the policy

9

documents were ambiguous as to the UM/UIM premium structure, making two observations that are relevant to the case before us.

{13} First, the Court noted that the declarations page left certain spaces blank where no premium was charged, and therefore, "it would be natural, or at least reasonable for the typical insured (who presumably would not think she was receiving something for nothing) to assume she had paid consideration (a premium) for each space filled in with "INCL," especially since the declarations page said, "INSURANCE IS PROVIDED WHERE A PREMIUM IS SHOWN FOR THE COVERAGE." *Id.* ¶ 17. The Court found another source of ambiguity in the fact that the UM/UIM coverage was listed on the declarations page on a vehicle-by-vehicle basis. *Id.* ¶ 18. The Court emphasized that UM/UIM coverage follows the insured and is "not linked in any way to whether [the insured is] riding in one of the cars listed on the policy." *Id.* Given this, the Court reasoned that if the insurer intended to provide only one coverage regardless of the number of vehicles listed on the declarations page, then listing coverage under each vehicle "disingenuously leads the reader of the policy to believe that she is getting more than she paid for." *Id.* As a result of these ambiguities, the Court held that "the three separate coverages indicated on the uninsured motorist/bodily injury line of the declarations page may be stacked." *Id.* ¶ 20.

**{14}** In *Montano*, the plaintiff insured four vehicles under a policy that, unlike *Rodriguez*, listed a single premium charge on the declarations page for "additional coverages," which was explained elsewhere in the policy to be UM bodily injury coverage. *Montano*, 2004-NMSC-020, ¶ 3. The plaintiff argued that even though the insurer purported to charge a single premium for UM coverage, actuarial data showed that the insurer's premium charge was almost double for multi-vehicle policies than for single vehicle policies. *See id.* ¶ 6. The Court concluded the contract was ambiguous as to whether the amount charged represents a single premium for a single amount of coverage in light of the fact that an endorsement allowed the insured to stack up to two coverages, and the insurer, "in setting its premium, admits that it has factored into its premium calculation the average number of vehicles on all multi-vehicle policies, including those policies insuring three or more vehicles." *Id.* ¶ 27. Consequently, the Court held that the plaintiff was entitled to stack four coverages. *Id.*

**{15}** While the Court in *Montano* indicated that this sort of ambiguity analysis might become unnecessary in future cases if insurers followed the offering model outlined in the opinion, *see id.* ¶ 20, *Montano* did not purport to overrule the ambiguity line of cases, nor did it purport to alter the line of authority holding that stacking is the appropriate remedy when multiple premiums are paid. *See id.* ¶¶ 1, 17 (reevaluating *Rodriguez* to the extent it suggested that "it was possible for an

11

insurer to draft standard contract language that would preclude stacking"); *see also Wilkeson*, 2014-NMCA-077, ¶ 17 (explaining that "*Montano*, in which our Supreme Court, in adopting a new approach that requires an insurer to obtain written rejections of stacking in order to limit its liability based on an anti-stacking provision, reiterated the public policy in favor of stacking when an insured has paid separate premiums" (alteration, internal quotation marks, and citation omitted)). That is to say that the ambiguity analysis set forth in *Rodriguez* remains good law for evaluating insurance contracts when a question arises as to whether the amount charged represents a single premium for a single amount of coverage, and we apply it here. *See Montano*, 2004-NMSC-020, ¶ 27.

{16} "[W]hen deciding whether more than one premium has been paid, the essential factor is whether a reasonable insured would think that she was paying more than one premium for more than one coverage." *Id.* ¶ 13 (alteration, internal quotation marks, and citation omitted). In the case before us, the policy is ambiguous as to whether multiple premiums were paid because, like *Rodriguez*, the UM/UIM coverages were listed on the declarations page on a vehicle-by-vehicle basis, indicating there is coverage attached to each vehicle. *See* 1994-NMCA-075, ¶ 18. More importantly, the declarations page listed a premium charge for the UM/UIM coverage on each vehicle, which could lead a reasonable insured to think they are paying multiple premiums. *See id.* ¶ 17. Although Allstate argues that it merely

12

allocated a single premium among the vehicles on the declarations page, this purported structure suffers from the same problem identified in *Rodriguez* in that it "disingenuously leads the reader of the policy to believe that she is getting more than she paid for." *Id.* ¶ 18.

{17}     To allow us to conclude the insurance contract is unambiguous, *Rodriguez* and *Montano* "require a plain and affirmative declaration that the amount charged represents a single premium for a single amount of coverage." *Montano*, 2004-NMSC-020, ¶ 27. Like *Montano*, we conclude that unquestionably, this contract has not done so. *See id.* As a result, Plaintiff is entitled to stack her coverages.

**CONCLUSION**

{18}     We reverse and remand for further proceedings consistent with this opinion.

{19}     **IT IS SO ORDERED.**


_____
**MEGAN P. DUFFY, Judge**

**WE CONCUR:**


_____
**JENNIFER L. ATTREP, Chief Judge**


_____
**JACQUELINE R. MEDINA, Judge**

13